Ralph DERRICO, Plaintiff–Appellant,

v.

SHEEHAN EMERGENCY HOSPITAL,
Defendant–Appellee.

No. 246, Docket 87–7415.

United States Court of Appeals,
Second Circuit.

Argued Nov. 9, 1987.
Decided April 5, 1988.

Richard Lipsitz, Buffalo, N.Y. (Richard P. Weisbeck, Jr., Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., of counsel), for plaintiff-appellant.

James N. Schmit, Buffalo, N.Y. (Melinda G. Disare, Damon & Morey, Buffalo, N.Y., of counsel), for defendant-appellee.

Before MESKILL, PRATT and ALTIMARI, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiff-appellant Ralph Derrico sued in New York state court for breach of what he called a state law contract of employment. The obligation he sought to enforce was identical to a term in an expired collective bargaining agreement providing that he could only be fired for just cause. He argues that this term was transformed after expiration into an independent contract under state law because federal law maintains terms of expired collective bargaining agreements in effect for some purposes after expiration, and because the relationship of employer and employee continued after expiration. Derrico contends, in essence, that the "just cause" term was reborn as an implied contract of employment under New York state law despite the extinction of the collectively bargained agreement where it originated. We examine this theory under federal labor law to determine whether the United States District Court for the Western District of New York, Elfvin, J., properly denied the motion to remand and dismissed the action after removal.

For the following reasons, we affirm.

## BACKGROUND

Derrico, a registered nurse, worked for defendant-appellee Sheehan Emergency Hospital (Hospital) from December 1980 until about May 6, 1986. For much of that period Derrico's bargaining unit at the Hospital was represented by the New York State Nurses Association (NYSNA). As a result of an election in December 1985, however, NYSNA was replaced as collective bargaining representative by the Communications Workers of America (CWA). The collective bargaining agreement (CBA) negotiated by NYSNA expired on December 31, 1985, and neither side argues that it was expressly or impliedly extended. The Hospital and CWA thereafter negotiated toward a new CBA.

While those negotiations were going on and before a new CBA had been concluded, Derrico ran into trouble at work. He was suspended about May 1, 1986, and fired a few days later. The parties dispute whether the Hospital had cause to fire Derrico. This dispute was significant because under the expired CBA the Hospital could discharge employees "only for just cause." *See* J.App. at 54.

Based on these events, Derrico filed a pair of charges with the Regional Counsel of the National Labor Relations Board (NLRB). The first, filed May 5, 1986, alleged that the Hospital suspended him "because of his membership [in] and activities

in behalf of [CWA]," and therefore violated sections 8(a)(1) and (a)(3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1), (a)(3) (1982), by interfering with protected activity. *See* J.App. at 33. The second, filed July 22, 1986, claimed that Derrico's discharge constituted both a section 8(a)(1) violation and a breach of the Hospital's duty to bargain in good faith under NLRA section 8(a)(5), 29 U.S.C. § 158(a)(5). *See* J.App. at 46. The Acting Regional Counsel declined to issue a complaint on either charge. He wrote to CWA on May 29, 1986, that there was "insufficient evidence" to support the first charge and that his investigation disclosed that the Hospital terminated Derrico because of time card violations and "poor job performance." *See* J.App. at 34. He then wrote on August 5, 1986, that the Hospital's conduct did not constitute a failure to bargain in good faith as the second charge alleged. *See* J.App. at 52. Derrico appealed the May 29 ruling to the NLRB but has not sought administrative review of the August 5 ruling.

After receiving the Acting Regional Counsel's ruling on the first unfair labor practice charge but before filing the second, Derrico opened another front. By Summons and Complaint served on the Hospital on June 23, 1986, he commenced a civil lawsuit in New York Supreme Court, Erie County, alleging that his discharge breached a contract of employment under New York state law. Derrico alleged breach of a contract term derived from the for-cause limitation in the expired CBA. Although the complaint stated this theory somewhat amorphously, later filings below and on appeal comport with Judge Elfvin's interpretation that Derrico alleged an implied contract under state law, *see* J.App. at 56. Derrico has elaborated on appeal that the implied contract arose by virtue of the parties' conduct in continuing their relationship under the CBA's terms following its expiration. "The individual employees agreed that, when they worked, [their] services would be governed" by the *status quo* defined by the expired CBA—giving rise to a "completely independent" employment agreement "separate from the expired [CBA]." Reply Br. at 5. Derrico argues that this implied contract is independent of the CBA, *see* Br. of Appellant at 7; Reply Br. at 5, and is thus separately enforceable under state contract law.

The Hospital petitioned the United States District Court for the Western District of New York for removal under 28 U.S.C.A. § 1441 (West 1973 & Supp.1987), arguing that the complaint raised federal issues, either as a section 301 breach of contract action, 29 U.S.C. § 185 (1982), or as a section 8(a)(5) unfair labor practice. *See* J.App. at 12–13. Derrico moved to remand on the basis that his complaint stated a purely state law claim.

In a Memorandum and Order dated April 11, 1987, the district court denied Derrico's motion to remand and granted the Hospital's motion to dismiss. *Derrico v. Sheehan Emergency Hospital,* 125 L.R.R.M. 2847 (BNA) (W.D.N.Y. Apr. 11, 1987) [available on WESTLAW, 1987 WL 9642]. The district court held that the expired CBA could not support an exercise of jurisdiction under section 301 and that Derrico's state law claim was accordingly not preempted by section 301. Any state law claim Derrico might state, said the court, would be so intertwined with the terms of the expired CBA that federal interests in uniform interpretation of collectively bargained contracts would be significantly compromised. It concluded without discussion that the suit was properly removed, and dismissed on the ground that the complaint raised issues within the primary jurisdiction of the NLRB.

Derrico filed a timely notice of appeal. He essentially repeats the arguments made below that he seeks only to enforce the terms of an "independent contract" under state law. The Hospital argues for affirmance principally on the section 301 preemption analysis.

## DISCUSSION

In analyzing the issues presented by this appeal, it is important to distinguish between two fundamentally different mechanisms by which a party might seek to en-

force an expired CBA. First, he or she might attempt to enforce the expired agreement directly, reasoning that, because the bargaining obligation continues the CBA in effect for purposes of defining the *status quo*, the CBA itself is substantively binding on the parties and suit may be maintained for its breach. The second mechanism, on which Derrico relies, proceeds from the same initial proposition yet is subtly different. Derrico claims that because the bargaining obligation continues the CBA in effect for purposes of defining the *status quo, and* because the employer and employee continue their relationship according to the terms thus defined, their conduct gives rise to an implied contract of employment under state law. Thus under the second mechanism, this implied contract—*not* the CBA itself—is substantively binding on the parties and suit may be maintained for its breach.

These mechanisms can be difficult to separate, especially because the "implied" term in this case is identical to its forebear from the CBA. But the differences between the two mechanisms have analytical ramifications crucial to our disposition of this case. Derrico's approach raises novel issues that go to the core of federal labor relations policy and require careful scrutiny.

1. *Preemption Under Section 301: The "Independent" Contract and Post-Expiration Effect of the CBA*

■ The Hospital contends that section 301 provides a basis for affirming the district court's disposition of both removal and preemption issues. We disagree. The district court correctly held that section 301 has no application in the absence of a currently effective CBA. Section 301 would of course preempt any attempt to enforce the CBA itself by resort to state law. *See Caterpillar Inc. v. Williams,* — U.S. —, ————, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). We have found cases invoking section 301's sweeping preemptive force, however, only where state law claims coincide with *current* collective bargaining agreements. *See, e.g., International Brotherhood of Electrical*

*Workers v. Hechler,* — U.S. —, —, 107 S.Ct. 2161, 2163, 95 L.Ed.2d 791 (1987); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 203–04, 105 S.Ct. 1904, 1907–08, 85 L.Ed.2d 206 (1985). When a complaint alleges a claim based on events occurring after the expiration of a collective bargaining agreement, courts have held that section 301 cannot provide a basis for jurisdiction. *See Office and Professional Employees Insurance Trust Fund v. Laborers Funds Administrative Office, Inc.,* 783 F.2d 919, 921 (9th Cir.1986); *Lumber Production Industrial Workers Local No. 1054 v. West Coast Industrial Relations Ass'n, Inc.,* 775 F.2d 1042, 1046 (9th Cir. 1985); *Pattern Makers' Pension Trust Fund v. Badger Pattern Works, Inc.,* 615 F.Supp. 792, 799 (N.D.Ill.1985); *International Ass'n of Machinists and Aerospace Workers v. Aerospace Division, UOP, Inc.,* 580 F.Supp. 641, 644 (D.Conn.1984); *Cement Masons Health and Welfare Trust Fund v. Kirkwood–Bly, Inc.,* 520 F.Supp. 942, 944–46 (N.D.Cal.1981), *aff'd,* 692 F.2d 641 (9th Cir.1982). *Cf. New Bedford Fishermen's Welfare Fund v. Baltic Enterprises, Inc.,* 813 F.2d 503, 504 & n. 1 (1st Cir.1987) (in suit based on failure to comply with terms of expired CBA, parties withdrew appeal of district court's determination that it lacked jurisdiction under section 301), *cert. denied,* — U.S. —, 108 S.Ct. 1074, 99 L.Ed.2d 234 (1988); *U.A. 198 Health & Welfare, Education & Pension Funds v. Rester Refrigeration Service, Inc.,* 790 F.2d 423, 425 & n. 10 (5th Cir.1986) (parties did not appeal district court's holding that it lacked jurisdiction under section 301 in suit involving post-expiration failure to honor contract terms), *cert. denied,* — U.S. —, 108 S.Ct. 1074, 99 L.Ed.2d 233 (1988). We reach the same conclusion.

■ Our holding that section 301 does not support jurisdiction over Derrico's claim is bolstered by the nature of the "implied" contract he alleges. Although many of Derrico's filings treat the purported agreement indistinctly, he refers to it as an *"individual* employment contract," Br. of Appellant at 7 (emphasis added), and

speaks of the "independent" contract as being between the Hospital and "the *individual* employees," Reply Br. at 5 (emphasis added). Section 301 grants jurisdiction, however, only over suits for breach of contracts between an employer and "a labor organization representing employees." 29 U.S.C. § 185(a). Although such contracts need not be formal collective bargaining agreements between employers and certified bargaining representatives, *see, e.g., Retail Clerks International Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 27–28, 82 S.Ct. 541, 547–48, 7 L.Ed.2d 503 (1962); *District 2 Marine Engineers Beneficial Association–Associated Maritime Officers v. Grand Bassa Tankers, Inc.*, 663 F.2d 392, 397–98 (2d Cir.1981), we know of no case holding that a contract between an employer and an *individual* employee falls under section 301. *Cf. Caterpillar*, —— U.S. at ——, 107 S.Ct. at 2431 ("Section 301 says nothing about the content or validity of individual employment contracts."). Thus, the mechanism by which Derrico purports to derive his state law contract places his claim beyond the reach of section 301.

Our conclusion is the only one reconcilable with the other considerations present in this type of case. First, there is always the possibility that a truly independent contract may coexist with even a current CBA in the proper circumstances, without being preempted by section 301. *See Caterpillar*, —— U.S. at ——, 107 S.Ct. at 2430. Derrico's assertions of "independence" are admittedly more tenuous than those in cases giving effect to such contracts, which have involved distinct contractual commitments originating entirely outside the collective bargaining process. *See, e.g., id.* at ——, 107 S.Ct. at 2427–31 (management employees demoted to non-management positions covered by CBA could sue for breach of "independent" promises made while they were in managerial positions); *Belknap, Inc. v. Hale*, 463 U.S. 491, 500, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983) (workers hired to replace strikers could sue for breach of independent contract based on employer's promises of "permanent" employment). In comparison, the mechanism by which Derrico purports to derive an independent contract is perilously close to the collective bargaining process and the expired CBA itself. However, to hold that Derrico alleges nothing more than breach of the expired CBA would be too great a limitation on the principle that truly independent contracts can exist. The mechanism alleged by Derrico renders the contract on which he sues sufficiently independent that we cannot hold it to be totally preempted without undermining the integrity of this recognized "independent contract" exception.

■ Moreover, this interpretation is in harmony with our understanding of the post-expiration effect of a CBA. At oral argument, counsel for Derrico misstated the law when he said that federal law preserves the expired CBA "in full force and effect" pending an impasse in bargaining. It is true that the parties must maintain the *status quo* until they have negotiated to impasse, and an employer's unilateral change of terms and conditions of employment during this process constitutes a failure to bargain in good faith under NLRA section 8(a)(5). *See NLRB v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). A corollary to this principle is that after expiration of a CBA and before impasse in bargaining, it is an unfair labor practice for an employer unilaterally to alter the *status quo* defined by the expired contract. *See, e.g., Rester Refrigeration*, 790 F.2d at 425 (employer "must honor" terms of expired CBA); *NLRB v. Sherwin–Williams Co.*, 714 F.2d 1095, 1102 (11th Cir.1983) (unfair labor practice "to withhold, discontinue, or cancel" benefit under expired contract before impasse); *Carpenter Sprinkler Corp. v. NLRB*, 605 F.2d 60, 64–65 (2d Cir.1979) (affirming NLRB's finding of section 8(a)(5) violation because bargaining had not reached impasse at time employer announced intent to replace terms of expired contract with "new schedule" of wages and benefits). The terms of an expired agreement thus retain legal significance because they define the *status quo*. Rights and duties under a collective bargaining agreement do not otherwise survive the contract's termination at an

agreed expiration date. *See Local 1251 International Union of United Automobile Workers v. Robertshaw Controls Co.,* 405 F.2d 29, 33 (2d Cir.1968) (in banc); *Procter & Gamble Independent Union v. Procter & Gamble Manufacturing Co.,* 312 F.2d 181, 184 (2d Cir.1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed. 2d 1053 (1963).

The limited exceptions to these principles rest on policy considerations not present in the instant case. For example, parties must arbitrate even after termination of a CBA containing an arbitration clause. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 253, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977). The *Nolde* "exception" proves the rule in the sense that it flows from an important and substantial federal policy favoring arbitration of labor disputes. *See Nolde,* 430 U.S. at 254, 97 S.Ct. at 1073. No comparable policy requires us to hold that the for-cause limitation in the instant case remained in effect after the CBA's termination.

Deference to the collective bargaining process also requires us to respect the expiration date chosen by the parties. Addressing the Hospital's section 301 preemption argument, we conclude that the CBA must be considered defunct upon its expiration for all purposes *except* definition of the *status quo.* Therefore, after expiration of the CBA there is no contract subject to section 301 and there can be neither removal jurisdiction nor preemption under section 301.

It would significantly expand section 301's reach to hold that it grants jurisdiction because of the mere presence of a defunct CBA, and to hold further that it confers jurisdiction over a contract between an individual employee and his employer. The Hospital presents us with no compelling reason to make this leap. If the decision below is to be affirmed, it must be on other grounds.

2. *Removal*

The district court did not explain its conclusion that Derrico's state law claim "was properly removed," J.App. at 57. The Hospital argues that section 301 provides a basis for affirming this portion of the decision below, but for the reasons stated we do not share that view. Derrico argues that the alleged "independence" of the contract he seeks to enforce requires remand to the New York Supreme Court. We do not share that view either.

 Removal is appropriate when a state court action could originally have been filed in federal court. 28 U.S.C.A. § 1441 (West 1973 & Supp.1987); *Caterpillar,* —— U.S. at ——, 107 S.Ct. at 2428; *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 19 n. 18, 103 S.Ct. 2841, 2851 n. 18, 77 L.Ed.2d 420 (1983). Under the familiar well pleaded complaint rule, removability is tested by " 'what necessarily appears in the plaintiff's statement of his own claim in the [complaint].' " *Id.* at 9–10, 103 S.Ct. at 2846 (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76 (1914)). Furthermore, it is well settled that a plaintiff as "master of the complaint" may preclude removal by electing to disregard an available federal dimension of a claim and asserting only a distinct state law cause of action. *See Caterpillar,* —— U.S. ——, 107 S.Ct. at 2430; *Pan American Petroleum Corp. v. Superior Court of Delaware,* 366 U.S. 656, 663, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584 (1961); *The Fair v. Kohler Die and Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); *Nordlicht v. New York Telephone Co.,* 799 F.2d 859, 862 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987). "If the plaintiff decides not to invoke a federal right, his claim belongs in a state court." *Pan American Petroleum,* 366 U.S. at 663, 81 S.Ct. at 1307. A corollary to these principles, however, is that a plaintiff cannot avoid removal by artful pleading, *i.e.,* by framing in terms of state law a complaint the " 'real nature of [which] is federal, regardless of plaintiff's characterization,' " *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3722, at 268–75

(2d ed. 1985)), *cert. denied,* —— U.S. ——, 107 S.Ct. 277; 93 L.Ed.2d 253 (1986), or "by omitting to plead necessary federal questions in a complaint," *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. at 2853.

It is unnecessary to sort out all the implications of these principles to evaluate the removal issue presented in this case, however, because Derrico pleaded *in his complaint* that he relied in part on federal labor doctrine [1]—specifically on the principle that an expired CBA defines the *status quo* for purposes of evaluating the duty to bargain in good faith. Although the complaint stated the principle without expressly identifying its provenance, references to the "collective bargaining process" left no doubt that the source was federal labor law. Derrico's counsel dispelled any possible ambiguity by volunteering that "the theory, in large part, has its origin in National Labor Relations Board decisions, that such terms and conditions of employment may not be changed except through collective bargaining." Affidavit in Support of Motion for Remand, July 18, 1986, J.App. at 31. Although Derrico attempts to distance his complaint from federal law by pitching it in terms of an "independent" state contract having its "origin" or "genesis" in federal labor law, the principle of labor law to which he refers is a necessary predicate to his claim. Although Derrico pleads a state law contract action, this is not a case in which the law that created the cause of action was "[a]s an initial proposition ... state law," *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848. On the contrary, Derrico's own pleading alleges a "right to relief [that] necessarily depends on resolution of a substantial question of federal law," *id.* at 28, 103 S.Ct. at 2856. Although this case is unusual in invoking federal law indirectly, as a stepping-stone

rather than a substantive right, we think that Derrico's outright reliance on federal doctrine suffices to support removal.

## 3. *Preemption*

The district court concluded that Derrico's "implied contract" approach could not be reconciled with the need for uniform interpretation of collectively bargained contracts under federal labor law. Derrico disputes this conclusion, arguing that uniformity is not implicated at all because the contract he alleges is "independent" of the CBA.

■ Assuming without deciding that the facts of this case state a claim for breach of an implied contract of employment under New York state law, we think that such a claim must be considered preempted. The states are not free to regulate in areas Congress intended to be left to " 'the free play of economic forces.' " *See Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission (Machinists),* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976) (quoting *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971)). The Supreme Court has broadly construed this "*Machinists* preemption" doctrine to bar "state interference with policies implicated by the structure of the [NLRA] itself," *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985). Thus we look to that structure "to determine whether certain conduct [is] meant to be unregulated," *id.* at 749 n. 27, 105 S.Ct. at 2394 n. 27. We perceive substantial potential for friction between the delicate machinery of the NLRA and the theory Derrico would have us recognize.

---

1. Two paragraphs of the Summons and Complaint dated June 16, 1986, squarely grounded Derrico's theory on principles of federal law.

 12. However, the provisions of paragraphs 4.03 and 4.04.3(b) [of the CBA] limiting to discharge for just cause, constitute a term and condition of employment continuing on for the benefit of bargaining unit employees, including plaintiff, until a point in time as such terms or conditions of employment are changed or modified *as a result of the collective bargaining process* with CWA.

 13. At the time of plaintiff's discharge, the collective bargaining process had not resulted in any such change or modification with respect to discharges, and, therefore, plaintiff had a continuing term or condition of employment not to be discharged except for just cause.

 J.App. at 4 (emphasis added).

Derrico's approach is inconsistent with the NLRA's structure for two reasons. First, it would artificially limit the parties' post-expiration options. When bargaining alone does not produce consensus, the NLRA contemplates that both sides will resort to "economic weapons," *see Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 617–18, 106 S.Ct. 1395, 1400–01, 89 L.Ed.2d 616 (1986); *Belknap,* 463 U.S. at 500; *Machinists,* 427 U.S. at 141, 96 S.Ct. at 2553 (quoting *NLRB v. Insurance Agents' International Union,* 361 U.S. 477, 488–89, 80 S.Ct. 419, 426–27, 4 L.Ed.2d 454 (1960)). Such resort is an integral part of the balance the NLRA strikes between labor and management. *See, e.g., Golden State Transit,* 475 U.S. at 619, 106 S.Ct. at 1401. The possibility that a term of an expired CBA might become an "implied" contract under state law would tie the parties' hands in a manner inimical to this facet of the NLRA's collective bargaining process. Exposure to liability at state law for breach of contract under the circumstances of this case would significantly alter the labor-management relationship that follows expiration of a CBA.

■ Second, Derrico's theory would significantly affect the collective bargaining process that lies at the heart of the NLRA. *See* NLRA section 1, 29 U.S.C. § 151 (1982); *Golden State Transit,* 475 U.S. at 619, 106 S.Ct. at 1401; *H.K. Porter Co. v. NLRB,* 397 U.S. 99, 103, 90 S.Ct. 821, 823, 25 L.Ed.2d 146 (1970). Expiration of a CBA plainly works a significant change in the parties' relationship. Just as plainly, the prospect of that change and the mutual awareness of the tactics to which either side may thereafter resort provide the parties with incentives to negotiate. To allow a CBA provision to linger on after the contract's expiration in the form of an implied contract would dilute these effects. Trivializing the parties' agreed termination mechanism in this manner would also trivialize the very freedom of contract that is a fundamental policy of the NLRA, *see H.K. Porter Co.,* 397 U.S. at 108, 90 S.Ct. at 826. To derive an implied contract at state law from the very post-expiration maintenance of *status quo* that the section 8 bargaining

obligation *requires* would raise the chaotic prospect that mere compliance with the NLRA would give rise to a contractual commitment in every state where such agreements may be implied from parties' conduct. This consequence would be tantamount to imposing a contract on the parties, a notion that has always been anathema to the NLRA, *see* NLRA section 8(d), 29 U.S.C. § 158(d); *H.K. Porter Co.,* 397 U.S. at 103–04, 90 S.Ct. at 823. The potential for disrupting collective bargaining is thus especially serious in this case and compels the conclusion that the state law claim is preempted by the NLRA.

The district court held that Derrico's claim alleged a violation of NLRA section 8(a)(5) (failure to bargain in good faith) and therefore fell within the primary jurisdiction of the NLRB. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). We need not decide whether the district court was correct in this holding. Our disposition of the preemption issue reflects our view that *Machinists* preemption more naturally describes the consequences of the theory Derrico alleges and more convincingly explains why, on the facts of this case, those consequences render his theory irreconcilable with federal law.

## CONCLUSION

Derrico complains that the district court's holding left him without a remedy. While we sympathize with his frustration, his inability to revive the expired contract that contained the for-cause limitation comports with elementary contract law and federal labor law. Our analysis of the preemption issues similarly accords with the principle that the parties' intent must govern the duration of their collectively bargained agreements. It is hardly a radical notion that one should encounter difficulty seeking to enforce the terms of an expired agreement.

For the foregoing reasons, we affirm the decision of the district court.