**Paul McKEE and Thomas Husted, Plaintiffs–Appellants,**

v.

**TRANSCO PRODUCTS, INC., Defendant–Appellee.**

**No. 965, Docket 88–9003.**

United States Court of Appeals, Second Circuit.

Argued March 29, 1989.

Decided April 24, 1989.

William Maker, Jr., New Rochelle, N.Y. (Campbell, McMillan, Bosco, Penzel, Danzig & Maker, of counsel), for plaintiffs-appellants.

Richard B. Wolf, Poughkeepsie, N.Y. (Rudnick & Wolfe, of counsel), for defendant-appellee.

Before FEINBERG, PIERCE and BROWN,* Circuit Judges.

FEINBERG, Circuit Judge:

Paul McKee and Thomas Husted appeal from a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, Ch. J., dismissing their complaint as untimely. The district court held that plaintiffs' action against their employer was governed by a six-month statute of limitations period under *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). We agree that this case is subject to the six-month limitations period, and therefore affirm.

## I.  Background

Paul McKee and Thomas Husted are asbestos workers-insulators, and members of a local union affiliated with the International Association of Heat and Frost Insulators and Asbestos Workers (the international union). Transco Products, Inc. (Transco), whose principal place of business is in Chicago, Illinois, manufactures and installs insulation for power plants throughout the United States. Plaintiffs started working for Transco in January 1985 at a power station in Connecticut, and were employed according to the terms of an industry-wide collective bargaining agreement between the Connecticut Insulators Association, an employer group, and Local 33 of the international union. Although Transco has never been a member of the Connecticut Insulators Association, since 1963 it has employed union workers in Connecticut as a "national specialty operator." The district court concluded that Transco's Connecticut employees were covered by the terms of the collective bargaining agreement with Local 33 (the union) pursuant to a 1963 agreement between Transco and the international union. This agreement allowed Transco to employ members of the international union anywhere in the country, and the work was automatically covered by the existing union contract in effect where the project was located.

Appellants were fired on February 25, 1985 because they did not leave their work site after completion of an assignment. Transco claims that they were idling after completion of a job, and should have sought out the foreman for new work; appellants claim that they were fired unlawfully because Transco's work rules obligated them to remain in their work area and wait for the foreman to assign new work to them. McKee and Husted enlisted the union's help in getting their jobs back, but the union's job steward was not successful in raising the grievance and the union, apparently, did not press it sufficiently to satisfy plaintiffs. McKee filed an unfair labor practice charge against the union with the National Labor Relations Board in April 1985 for not processing the grievance, but then withdrew the charge in May 1985, allegedly because he feared retaliation

---

* Honorable John R. Brown, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

from the union. No attempt was made, under the collective bargaining agreement, to submit plaintiffs' grievance to the industry-wide Trade Board.[1]

More than three years after their discharge, in June 1988, plaintiffs filed this lawsuit against their former employer only, alleging that Transco had breached the collective bargaining agreement. In their original complaint, plaintiffs asserted jurisdiction under both 29 U.S.C. § 185 (§ 301 of the Labor Management Relations Act (LMRA)) and 28 U.S.C. § 1332(a)(1) (diversity). In an amended complaint, however, plaintiffs claimed jurisdiction based solely on diversity of citizenship. Despite this attempt to transform their claim into a state breach of contract claim, the district court found that plaintiffs had submitted a well-pleaded allegation that their employment was governed by a labor contract and that their claim was properly asserted under § 301. Characterizing plaintiffs' claim as "hybrid," the district judge dismissed the complaint as untimely under the six-month statute of limitations borrowed from § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), pursuant to *DelCostello.* This appeal followed.

## II. Discussion

Appellants argue that this is a state contract action, and should be controlled by a six-year statute of limitations, the period provided by applicable state law for breach of contract actions. They also argue that even if the district court properly characterized the claim as hybrid, the court erred in applying the six-month limitations period under *DelCostello* because there was no binding arbitration for this dispute under the collective bargaining agreement.

### A. Characterization of the Claim

Section 301 of the LMRA provides federal jurisdiction for causes of action based on violations of collective bargaining agreements, regardless of citizenship of the parties or amount in controversy. Individuals or unions may bring actions under this section. See *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). Because plaintiffs claimed that Transco breached a collective bargaining agreement, we agree with the district court that § 301 was properly pled, and that appellants cannot now transform this case into simply a state breach of contract claim. In this respect, federal law preempts state law in this case. See *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962) ("incompatible doctrines of local law must give way to principles of federal labor law").

Claims asserted under § 301 are not governed by a specific statute of limitations, and therefore, courts reviewing

1. Article VIII of the collective bargaining agreement provides:

TRADE BOARD

There shall be (sic) Trade Board consisting of four (4) members of the Association and four (4) members of the Union and said Trade Board shall have the right to investigate all labor operations of the parties to this Agreement within its prescribed limits so far as any of the provisions of this Agreement are involved in connection with which any question may arise, and for this purpose shall have the right to summon, question and examine any party to this Agreement, or their representatives or agents.

The Trade Board shall be governed by the following By–Laws:

1. Regular meetings shall be held quarterly in January, April, July and October.

2. Special meetings shall be called by the Chairman of the Trade Board on written request of either side, stating object for which meeting is to be called, but no matters shall be discussed at special meetings except those designated in said written request.

3. Six (6) shall constitute a quorum, three (3) from each side, neither shall cast more ballots than the other.

4. The vote on all questions of violations of the Agreement shall be by secret ballot.

5. It shall require a majority vote to carry and (sic) questions.

6. The Trade Board shall have the power to make such orders as agreed by majority vote to compensate or make whole a complaining employee for work days lost. Similarly, the Trade Board shall have the power to order the Union or any of its members to make whole or compensate an Employer for failure on the part of the Union or any of its members to comply with the terms of this contract. Any such action, however, must be taken by majority vote of the Trade Board.

claims under that section must borrow a limitations period. Usually, when federal statutes are silent on limitations periods, the court borrows a statute of limitations from state law. See *Int'l Union, United Auto. Workers of America v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04, 86 S.Ct. 1107, 1111–12, 16 L.Ed.2d 192 (1966). However, there is a "narrow" exception to this "standard borrowing rule." *Reed v. United Transp. Union,* —— U.S. ——, 109 S.Ct. 621, 626, 102 L.Ed.2d 665 (1989). When "analogous state statutes of limitations ... frustrate or significantly interfere with federal policies," *id.* 109 S.Ct. at 627, a federal statute of limitations may be the more appropriate choice.

■ Appellants claim that even if their action is a § 301 claim, the district court erred in characterizing it as hybrid. A hybrid case is one in which the employee has a cause of action against both the employer and the union. The claim against the employer is that it violated the collective bargaining agreement. The claim against the union is that the union did not properly represent the employee in pressing his grievance against the employer. See *Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967). In *DelCostello*, the case upon which the district court relied for its holding in this case, the Supreme Court held that a hybrid claim against an employer for unlawful discharge under § 301 and against a union under an implied right of action for fair representation, is subject to the six-month limitations period borrowed from § 10(b) of the NLRA, not a borrowed state limitations period. 462 U.S. at 172, 103 S.Ct. at 2294–95.

In enacting § 10(b), "Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 70, 101 S.Ct. 1559, 1568, 67 L.Ed.2d 732 (1981) (Stewart, J.,

concurring). The same sort of balancing is "at issue" in a hybrid case. Id. Recognizing such similarities, the Supreme Court adopted Justice Stewart's reasoning in *Mitchell* when deciding *DelCostello*, and declined to borrow a state statute of limitations for a hybrid case, explaining: "we have available a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here—a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels." 462 U.S. at 169, 103 S.Ct. at 2293. The interests that the *DelCostello* court found to be implicated in a hybrid action were the national policies of promoting stable bargaining relationships and private settlement of disputes, while allowing an aggrieved employee ample time to bring a § 301/fair representation suit, 462 U.S. at 163, 166, 171, 103 S.Ct. at 2289–90, 2291–92, 2294. These interests would not be served if an employee could challenge an employer's action up to six years after that action took place, and after the collective bargaining agreement had expired (as usually would be the case in that period of time) and had been replaced by a new one.

■ In this case, the district court found that a hybrid claim had been presented, even though the union had not been sued. The law is clear that regardless of who is named as a defendant, a hybrid claim is presented if an employee has a cause of action against both the employer and the union, where the two claims are inextricably linked, and where the case to be proved is the same against both. See *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290–91. "[W]hat makes a case a 'hybrid' action against both union and employer is the nature of the *claim*, not the identity of the *parties*." *Montgomery v. National R.R. Passenger Corp.*, 619 F.Supp. 1393, 1398 (D.Conn.1985) (emphasis in original). Plaintiffs cannot circumvent the six-month limitations period for hybrid actions by choosing to sue only their employer. It is clear from the record that plaintiffs thought they had a fair representation claim against the union that they chose not to pursue. The district court had before it

McKee's affidavit, which states that he asked the union for help, that the union representative warned him he would "never work again in Connecticut" if he pursued his grievance against Transco, and that he withdrew his unfair labor practice charge against the union because he feared "Blackballing." Thus, we reject appellants' contention, made most vigorously at oral argument, that the district court erred in characterizing their action as hybrid.

### B. Effect of Provision for Private Dispute Settlement

Appellants, however, go on to argue that even if their claim is hybrid, *DelCostello* does not control because the collective bargaining agreement here, unlike the one in *DelCostello,* does not require binding arbitration of their claim against Transco. Indeed, one of their principal arguments to us for reversal is that the district court refused to decide the arbitrability of their claim.

The collective bargaining agreement in this case granted broad jurisdiction to the Trade Board to resolve disputes. See note 1 supra. Thus, the Trade Board had "the right to investigate all labor operations of the parties ... so far as any of the provisions of [the] Agreement are involved, in connection with which any question may arise." Despite this, appellants argue that the Trade Board procedure was inapplicable because Transco was not a party to the collective bargaining agreement, or at least there was a sufficient factual dispute on this issue to make summary judgment inappropriate. Plaintiffs also argue that the underlying grievance was not within the Trade Board's jurisdiction, and that the Trade Board's decisions were neither binding nor a final resolution of the parties' differences because the Board is always composed of an equal number of representatives from labor and management, leading to an inevitable deadlock. For these three reasons, appellants claim that federal labor law policies are not implicated and the six-month statute of limitations is inapplicable.

As indicated earlier, the district court found that Transco's operations were cov-

ered by the terms of the collective bargaining agreement because Transco was a national specialty operator. Appellants' contention that there is an issue of fact regarding applicability of the contract does not withstand analysis. Their complaint relied on the collective bargaining agreement, as the district judge pointed out, and plaintiffs annexed the agreement to the amended complaint as an exhibit. Conversely, Transco certainly does not argue that it is not bound by the agreement. Under the circumstances, the district judge correctly rejected the contention that the collective bargaining agreement did not apply.

Although the district court did not decide whether the subject matter of this dispute was covered by the Trade Board grievance procedure, we do not believe that it is necessary for us to remand for such a determination. Because the federal policy in favor of private dispute resolution is so strong, there is a presumption of arbitrability that is particularly applicable when the governing labor agreement contains a broad arbitration clause. See *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). In that circumstance, a § 301 claim should be arbitrated "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

Therefore, Transco need only make a colorable claim—assisted by the presumption—that the Trade Board procedure under the collective bargaining agreement was applicable in order for the federal policies of promoting stable bargaining relationships and the private resolution of disputes to be implicated. See *Emery Air Freight Corp. v. Local 295, Int'l Bhd. of Teamsters,* 786 F.2d 93, 99 (2d Cir.1986). While the Trade Board provision could have been drafted more artfully, it is reasonable to say that under the broad language in

this contract, Transco has made such a showing here.

In addition, we do not see why the make-up of the Trade Board, with equal representatives from labor and management, would always lead to a deadlock, as appellants claim. The collective bargaining agreement at issue in this case governs an entire industry in Connecticut. Because the parties to the agreement, and their representatives on the Trade Board, are in a continuing relationship, we can expect that the members of the Trade Board can rise above their parochial interests to vote in favor of their adversary when the facts call for it. See *Rigby v. Roadway Express, Inc.*, 680 F.2d 342, 344 (5th Cir.1982); cf. *Mitchell*, 451 U.S. at 58, 101 S.Ct. at 1561–62 (grievance panel composed of three representatives from each side); *Hines*, 424 U.S. at 557 n. 2, 96 S.Ct. at 1053 n. 2 (committee composed of equal number of representatives of the parties to the agreement). Under the circumstances, the existence of the Trade Board provision was sufficient to trigger the application of the *Del-Costello* limitations period.

It is true that there are cases that arguably support appellants' claim that a six-year statute of limitations applies here, but they are readily distinguishable because the contracts in those cases lacked applicable private grievance procedures. In *Hoosier*, 383 U.S. at 705, n. 7, 86 S.Ct. at 1113, n. 7, the Court applied the state limitations period because the action there for vacation pay under a collective bargaining agreement closely resembled a state breach of contract claim. In *Hoosier*, however, there was no provision in the collective bargaining agreement for arbitration, see *Reed*, 109 S.Ct. at 628 n. 5, and the Court itself specifically limited *Hoosier's* holding to its own facts, 383 U.S. at 705, n. 7, 86 S.Ct. at 1113, n. 7. Where an agreement has a private dispute resolution mechanism, an action for breach of that agreement is less analogous to a common law breach of contract action than was the agreement in *Hoosier*. Similarly, in *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 168 (2d Cir.1984), cert. denied, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985), this court stressed that it was "not even argued" that the dispute between the parties was arbitrable. In *Hoosier* and *O'Hare*, the policies of the federal labor law were not nullified by application of the longer state limitations period the way they would be in cases where private grievance procedures exist. The practicalities of labor-management relations suggest that it would be destructive of the private dispute provisions of a collective bargaining agreement—and therefore of the agreement itself—to allow employees to raise claims of breach of that agreement up to six years after the event.

Plaintiffs' action is barred by the applicable statute of limitations. The judgment of the district court is affirmed.