996 F.2d 592
 143 L.R.R.M. (BNA) 2580, 62 USLW 2048,
125 Lab.Cas. P 10,747,
16 Employee Benefits Cas. 2715,
Pens. Plan Guide P 23880D
 UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, LOCAL 33, and Kirk Golden, on
behalf of himself and all others
similarly situated,
Plaintiffs-Appellants,
v.
R.E. DIETZ COMPANY, Defendant-Appellee.
 No. 1419, Docket 92-9368.
 United States Court of Appeals,
Second Circuit.
 Argued April 28, 1993.
Decided June 17, 1993.
 
 1
 Thomas J. Giblin, New York City (Giblin & Lynch, Leonard R. Page, Detroit, Michigan, of counsel), for plaintiffs-appellants United Auto., Aerospace and Agr. Implement Workers of America, Local 33, and Kirk Golden, on behalf of himself and all others similarly situated.
 
 
 2
 Renee L. James, Syracuse, NY (John T. McCann, of counsel), for defendant-appellee R.E. Dietz Co.
 
 
 3
 Before: NEWMAN, MAHONEY, Circuit Judges, and EGINTON*, District Judge.
 
 EGINTON, Senior District Judge:
 
 4
 Appellants United Automobile, Aerospace and Agricultural Implement Workers of America ("U.A.W."), Local 33, and Kirk Golden, on behalf of himself and all others similarly situated, brought this action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and 28 U.S.C. § 1331 seeking to recover vacation pay requested by Golden and other Local 33 members while they were on strike in 1989. Pursuant to several dispositive motions, the district court dismissed all three counts of the complaint. This is an appeal from the district court's ruling.FACTS
 
 
 5
 R.E. Dietz Company ("Dietz") and Local 33 were parties to a three-year collective bargaining agreement ("CBA") that expired on June 26, 1988. The union members, however, continued to work until the end of the year while negotiations for a new contract were being conducted. Pursuant to its obligation under § 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(5), Dietz indicated by a letter to its employees dated July 1, 1988 ("post-expiration letter") that during the negotiation period it would honor all the terms of the expired CBA, except for the terms relating to union security and checkoff provisions. Appellants contend that Dietz was not merely following its obligation under § 8(a)(5), but rather had entered into an interim agreement with the union.
 
 
 6
 In January 1989, the union and Dietz reached an impasse in their negotiations and the union threatened to strike. Having been informed that Dietz would stop paying wages to and contributing to health care and other fringe benefit programs for all striking workers, the employees nevertheless decided to strike. In June 1989, Dietz locked out the union.
 
 
 7
 Subsequently, appellant Kirk Golden and the other locked-out employees requested one week's vacation pay allegedly due under the expired CBA for work performed in 1988. Article XX of the expired CBA contains provisions regarding vacation and vacation pay.[1] Under Article XX, employees were required to take their vacation in the calendar year or it was lost. However, certain employees who resigned or were discharged were entitled to receive vacation pay in lieu of vacation.
 
 
 8
 Appellants characterize their request for vacation pay as a grievance, although no formal grievance was filed, and argue that a request to arbitrate the vacation pay dispute would have been futile since Dietz had indicated that it would not arbitrate any grievances. In fact, Dietz had stated in a letter that it would not arbitrate disputes involving events occurring after June 26, 1992, because it was not obligated to arbitrate grievances that did not arise under the terms of the expired CBA. The expired CBA required arbitration of disputes involving wages, hours, or working conditions arising out of the interpretation or application of the CBA. When Dietz refused appellants' request for vacation pay allegedly due under the expired CBA, appellants filed the instant action instead of arbitrating the dispute.
 
 
 9
 The complaint alleges that Dietz's failure to pay appellants their vacation benefits constitutes a breach of contract and a violation of ERISA, 29 U.S.C. § 1132. Jurisdiction is claimed under § 301 of the LMRA, 29 U.S.C. § 185, § 502 of ERISA, 29 U.S.C. § 1132, and federal common law, 28 U.S.C. § 1331.
 
 
 10
 After extended hearings, the district court, in a series of rulings, dismissed all counts of the complaint. The district court first dismissed all three counts pursuant to Dietz's Motion to Dismiss and/or for Summary Judgment. Then upon reconsideration, the court reinstated appellants' ERISA claim. After discovery and hearings on a second round of dispositive motions, the court dismissed the ERISA claim, denied as moot appellants' motion for class certification, and sanctioned appellants for late filing of a motion for reconsideration of the court's order dismissing the other counts of the complaint.
 
 DISCUSSION
 
 11
 § 301 Claim
 
 
 12
 The first count of appellants' complaint is brought under § 301 of the LMRA and alleges that Dietz violated the CBA by failing to pay vacation benefits. Because the CBA expired in June, 1988, we initially address whether appellants' claim for vacation benefits that accrued after the expiration of the CBA is covered by § 301. Section 301 covers suits for violation of contracts between an employer and a labor organization. 29 U.S.C. § 185. Jurisdiction under § 301 is limited by the plain language of the statute to "contract[s] between an employer and a labor organization representing employees." Section 301 has no application in the absence of a currently effective collective bargaining agreement. Because the alleged post-expiration contract in this case is founded on a letter from Dietz to its employees, it is not the type of contract covered by § 301. Derrico v. Sheehan Emergency Hospital, 844 F.2d 22, 26 (2d Cir.1988).
 
 
 13
 Further, the language of the post-expiration letter from Dietz to its employees merely recites Dietz's intention to honor its obligations under § 8(a)(5) of the NLRA. It does not offer new terms of employment. Dietz's failure to pay vacation benefits after the expiration of the CBA might constitute a violation of its obligation to maintain the status quo under § 8(a)(5), but would not give rise to a § 301 claim. See Derrico, 844 F.2d at 26 (after expiration of the CBA and before impasse in bargaining, it is a § 8(a)(5) unfair labor practice for an employer unilaterally to alter the status quo as defined by expired contract).
 
 
 14
 Because the National Labor Relations Board ("NLRB") generally has exclusive jurisdiction over unfair labor practice claims, the district court would not have jurisdiction over this claim. See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-45, 79 S.Ct. 773, 779-80, 3 L.Ed.2d 775 (1959); Buckley v. American Fed'n of Television & Radio Artists, 496 F.2d 305, 312 (2d Cir.), cert. denied, 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974). An exception to this rule is permitted when federal laws other than the NLRA or federal policies are implicated. See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 73-84, 110 S.Ct. 424, 429, 107 L.Ed.2d 388 (1989); International Org. of Masters v. Trinidad Corp., 803 F.2d 69, 73-74 (2d Cir.1986); American Postal Workers Union, AFL-CIO v. United States Postal Serv., 766 F.2d 715, 720 (2d Cir.1985), cert. denied, 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986). In this case, any post-expiration obligation for the payment of vacation pay accruing from June 27 to December 31, 1988 was imposed solely by the NLRA. The district court properly dismissed appellants' post-contract breach claim for lack of jurisdiction.
 
 
 15
 By contrast, the claim for vacation benefits for January 1 through June 26, 1988, the period prior to the expiration of the CBA, clearly falls within § 301 as a suit for violation of a contract "between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The issue presented with respect to this claim, however, is whether it is barred by the applicable statute of limitations.
 
 
 16
 Because there is no statute of limitations prescribed under § 301, courts typically apply the most closely analogous state statute of limitations to § 301 claims. International Union, United Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); McKee v. Transco Products, Inc., 874 F.2d 83, 85-86 (2d Cir.1989). In Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294-95, 76 L.Ed.2d 476 (1982), the Supreme Court made an exception to this general rule and applied a federal statute of limitations to a case brought under both § 301 and § 8(b) of the NLRA, 29 U.S.C. § 158(b), and involving an arbitration agreement. The presence of the arbitration clause in the collective bargaining agreement and the hybrid nature of the claims distinguished the case from a straightforward breach of contract case. The claims were of a hybrid nature because, to succeed against either the employer or the union, the employees had to show both that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation. Applying the six-month statute of limitations provided under § 10(b) of the NLRA, the Court explained that "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," the federal statute of limitations should be applied. Del Costello, 462 U.S. at 172, 103 S.Ct. at 2294-95.
 
 
 17
 Following Del Costello, this court in McKee held that the mere presence of an arbitration clause is sufficient to render an employee's claim a hybrid claim and subject it to the six-month statute of limitations.[2] "Because the federal policy in favor of private dispute resolution is so strong," a § 301 claim should be arbitrated unless it involves an issue that clearly is not covered by the arbitration clause. 874 F.2d at 87; Litton Financial Printing v. NLRB, --- U.S. ----, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991).
 
 
 18
 Appellants' argument that a request to arbitrate would have been futile because Dietz had anticipatorily repudiated the grievance arbitration procedure does not affect the statute of limitations. McKee invokes the six-month statute just because there is an arbitration clause, without regard to how it works or how it may be avoided. The district court properly applied the six-month statute of limitations and dismissed appellants' breach of contract claim as untimely. See 29 U.S.C. § 160(b).
 
 
 19
 Appellants fare no better with their argument that the limitations period should not apply because the cause of action for vacation pay did not arise until after the expiration of the CBA. Where a disputed action taken after the CBA's expiration infringes on rights that accrued or vested under the CBA, the dispute is considered to have arisen under the CBA and is therefore subject to arbitration. See Litton, --- U.S. at ----, 111 S.Ct. at 2225; Nolde Bros., Inc. v. Local No. 358, 430 U.S. 243, 255, 97 S.Ct. 1067, 1074, 51 L.Ed.2d 300 (1977).
 
 ERISA Claim
 
 20
 Count two of appellants' complaint alleges that Dietz violated the terms of an employee welfare benefit plan covered by ERISA by refusing to pay accrued vacation benefits. Section 502 of ERISA permits civil actions to redress violations of an employee welfare benefit plan. The first issue to be addressed as to this count is whether Dietz's policies and practices regarding vacation pay constituted an "employee welfare benefit plan" as defined by ERISA.[3] 29 U.S.C. § 1002(1).
 
 
 21
 Vacation benefits paid from an employer's general assets do not constitute an employee benefit plan under ERISA. 29 C.F.R. § 2510.3-1(b)(3)(i) (1992) (term "employee welfare benefit plan" does not include payment of compensation out of an employer's general assets to an employee who is on vacation); Massachusetts v. Morash, 490 U.S. 107, 112-19, 109 S.Ct. 1668, 1671-75, 104 L.Ed.2d 98 (1989); Shea v. Wells Fargo Armored Service Corp., 810 F.2d 372, 376-77 (2d Cir.1987). Appellants contend there is a genuine issue of fact as to whether vacation benefits were paid from Dietz's general assets or from a special "reserve" account. After extensive review of deposition testimony, balance sheets, and other financial documents, the district court found that appellants failed to present any evidence to rebut Dietz's proof that vacation benefits were paid from the company's general assets. The district court correctly ruled in finding that a "vacation and holiday" column in one of Dietz's financial records was "simply a listing of the company's current liabilities at a fixed point in time." Nor did it err in concluding that the evidence on this issue did not raise a genuine issue of material fact as to the existence of a separate account or fund from which vacation pay was paid.
 
 
 22
 Appellants argue that contingencies in connection with the payment of vacation pay exclude such pay from the definition of a payroll practice and therefore subject it to ERISA. However, appellants fail to allege contingencies upon which their vacation benefits are conditioned other than those contained in the CBA. A condition that employees use their vacation during the year or lose it is a contingency within the control of the employees and not the type of contingency which subjects the payment of vacation benefits to ERISA. See Shea, 810 F.2d at 377; Czechowski v. Tandy Corp., 731 F.Supp. 406, 408 (N.D.Cal.1990). Further, the regulations that define "payroll practice" are silent as to whether additional conditions or contingencies regarding vacation pay subject it to ERISA. See 29 C.F.R. § 2510.3-1(b). The district court properly found that the vacation benefits at issue fall outside the scope of ERISA.
 
 
 23
 The second issue raised by appellants' ERISA claim is whether the court has jurisdiction to hear appellants' claim for vacation pay arising after the expiration of the CBA. Jurisdiction under § 502 of ERISA is determined by the source of the obligation. Pattern Makers Pension v. Badger Pattern Works, 615 F.Supp. 792, 799 (N.D.Ill.1985). To the extent appellants' claim to vacation pay arises pursuant to Dietz's § 8(a)(5) obligation to maintain the status quo and continue the benefits provided under the expired CBA, there is no jurisdiction under ERISA. Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 550-53, 108 S.Ct. 830, 836-38, 98 L.Ed.2d 936 (1988). The district court properly dismissed this portion of appellants' claim for lack of jurisdiction.
 
 Federal Common Law Claim
 
 24
 Count three of the complaint alleges that Dietz breached an implied contractual obligation to provide vacation benefits to its employees, in violation of federal common law. This "implied contract" refers to the interim agreement allegedly existing between July and December of 1988, after the CBA expired.
 
 
 25
 The circumstances in which courts have resorted to federal common law as an independent jurisdictional basis under 28 U.S.C. § 1331 are limited. Unless a claim presents an issue requiring construction of an Act of Congress or unless a distinctive policy of an Act of Congress requires that federal principles control the disposition of the claim, there is no independent claim for jurisdiction under § 1331. Ivy Broadcasting Co. v. American Telephone & Telegraph Co., 391 F.2d 486, 493 (2d Cir.1968); In re "Agent Orange" Product Liability Litigation, 635 F.2d 987, 993 (2d Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). Plaintiffs have no support for their claim that there is a federal right to vacation benefits provided for in a labor contract. As the district court properly noted, this claim is merely a restatement of appellants' § 301 claim.
 
 
 26
 To recognize appellants' post-expiration breach of implied contract claim under federal common law would usurp the role of the NLRB in resolving disputes arising under § 8(a)(5). As the court in Derrico noted, "[t]he possibility that a term of an expired CBA might become an 'implied' contract under state law would tie the parties' hands in a manner inimical to this facet of the NLRA's collective bargaining." Derrico, 844 F.2d at 29. This same logic applies when the purported post-expiration contract is attributed, as here, to federal common law. The district court properly dismissed this claim.
 
 Costs and Attorney Fees
 
 27
 Appellants argue that the district court erred in characterizing their motion to vacate the district court's order dismissing counts one and two of the complaint ("Motion in Limine") as vexatious and in awarding Dietz costs and attorneys' fees in connection with this motion. Rule 10(n) of the General Rules for the Northern District of New York provides that a failure to comply with Rule 10 subjects the moving party to discipline, including sanctions and the imposition of costs and attorneys fees. Appellants filed their Motion in Limine on October 15, 1992. This motion was made well after the time specified in Rule 10(m). Upon review of the record, we find that the district court did not abuse its discretion in concluding that the new facts cited in the motion were not material to its December ruling.
 
 
 28
 Appellants' claim that they should have been given notice and an opportunity to be heard before the imposition of sanctions is somewhat disingenuous. While it is true that they are entitled to such notice and opportunity to be heard, see Securities Indus. Ass'n v. Clarke, 898 F.2d 318, 322 (2d Cir.1990), it is not true that appellants were denied these rights. Dietz's opposition papers to the Motion in Limine explicitly requested the sanction of costs and attorneys' fees. This request put appellants on notice of the claim against them. Yet appellants never submitted reply papers opposing the application for sanctions as provided for by Rule 10(c) ("Reply papers may be filed with leave of the court upon a showing of the necessity therefor."). Nor did appellants seek to present oral argument on the sanctions issue at the hearing on the Motion in Limine, even though the district court permitted oral argument beyond the bounds of its original limitation of that argument. We find that appellants had notice of Dietz's application for sanctions and failed to take advantage of opportunities to reply. The district court's sanction was proper.
 
 Remaining Claims on Appeal
 
 29
 There are two remaining claims on appeal. First, appellants contend that the district court erred in denying their Motion for Summary Judgment. Because the district court correctly decided that appellants do not have a claim covered by ERISA, failed to file their § 301 claim within the applicable six-month statute of limitations period, and failed to state a cause of action arising under 28 U.S.C. § 1331, this argument is moot.
 
 
 30
 Second, appellants claim that the district court erred in denying their motion for class certification. Since the district court properly dismissed all three causes of action, the issue of class certification is moot.
 
 CONCLUSION
 
 31
 For the reasons set forth above, the ruling of the district court is AFFIRMED.
 
 
 
 *
 Warren W. Eginton, Senior Judge, United States District Court for the district of Connecticut, sitting by designation
 
 
 [1]
 Article XX provides in pertinent part:
 Section 1(b): Every employee shall be required to take his or her vacation in accordance with the weeks of vacation as scheduled above. Any employee entitled to three (3) or more weeks of vacation may have credited towards such requirement, in periods of five (5) days, any continuous absence caused by layoff, illness, injury or leave of absence occurring during the year. In no event, however, may any such periods of continuous absence be applied towards the first two (2) weeks of required vacation. All vacations must be scheduled to start prior to the end of the calendar year.
 Section 1(c): Employees will be entitled to receive, upon request, the full amount of their vacation pay for all weeks of vacation entitlement at the commencement of their first week of vacation.
 Section 2: An employee who is absent, and receives Workmen's Compensation benefits, shall have included in their earnings for the purpose of calculating their vacation pay the amount they would have earned had they not been disabled, which amount shall be calculated by using their average straight time hourly earnings for the eight (8) weeks prior to their initial absence for the particular injury or disability. To be eligible for benefits under this Section 2, an employee must have worked thirteen (13) pay periods during the 12 months prior to commencement of employee's first week of vacation of the year in which the vacation occurs.
 Section 4: An employee who is terminated for any of the reasons specified in Article XXVI [e.g., resignation or discharge for just cause] shall nevertheless be eligible for any unused vacation pay, except an employee who is discharged for assault, sabotage, theft or other offenses of similar gravity.
 
 
 [2]
 Although the Seventh Circuit would view the union's claim in this case as a straight contract action, subject to a six-year statute of limitations, we take a different approach. See International Union of Elevator Constructors v. The Home Elevator Co., 798 F.2d 222 (7th Cir.1986). We hold that the mere presence of an arbitration clause implicates the federal interest in prompt, private dispute resolution in labor cases and requires application of the six-month statute of limitations
 In addition, it makes no sense to apply the six-year statute of limitations to the union's claim for vacation benefits and the six-month statute of limitations to the employee's claim for the same benefits. Practically, the same limitations period should apply to both parties. We need not decide whether the contract statute of limitations would apply to a union's claim that did not so directly parallel the employees' claim, for example, a claim to compel contributions to a pension fund.
 
 
 [3]
 ERISA defines an "employee welfare benefit plan" as, inter alia,
 any plan, fund or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits ....
 29 U.S.C. § 1002(1).