**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA,**
Plaintiff–Appellee,

v.

**BIG HORN COAL COMPANY, a**
Wyoming corporation,
Defendant–Appellant.

No. 89–8067.

United States Court of Appeals,
Tenth Circuit.

Oct. 15, 1990.

Earl V. Brown, Jr. of United Mineworkers of America, Washington, D.C. (John L. Quinn and Robert M. Weaver of Longshore, Nakamura & Quinn, Birmingham, Ala., on the brief) for plaintiff-appellee.

Sandra R. Goldman (Jeffrey T. Johnson with her on the briefs) of Holland & Hart, Denver, Colo., for defendant-appellant.

Before HOLLOWAY, Chief Judge, McWILLIAMS, Circuit Judge, and BRATTON, Senior District Judge.*

PER CURIAM.

This appeal arises from an order of the district court granting summary judgment for the United Mine Workers of America (the "Union") against Big Horn Coal Company (the "Company") and denying the Company's cross-motion for summary judgment. 715 F.Supp. 1060. The disputed issue is whether the Company has an obligation to submit to arbitration certain grievances which arose after the expiration date of the parties' collective bargaining agreement. The lower court held as a matter of law that such an obligation exists in this case. We find no contract between the parties upon which to base jurisdiction under Section 301 of the Labor–Management

---

* The Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation.

Relations Act, 29 U.S.C. § 185(a). Accordingly, we reverse.

In the spring of 1987, Union and Company officials began negotiation efforts to reach agreement on a new labor-management contract. These efforts extended past the June 1, 1987 expiration date of the parties' collective bargaining agreement but no new agreement was reached. On July 1, 1987, after negotiations reached an impasse, the Company implemented its "last and final offer," an offer which, from all appearances, included the grievance and arbitration provision of the expired contract.[1]

The employees continued thereafter to work until October 5, 1987, when Local Union 2055, comprised of mine worker employees at Big Horn Coal Company's Sheridan, Wyoming mine, commenced a strike. The strike continued until on or about June 27, 1988, at which time the Union, on behalf of Local Union 2055 members, notified the Company of. the employees' unconditional offer to return to work.

The Company, however, refused to reinstate eighteen of the striking employees, alleging that they had been engaged in serious strike-related misconduct. The Union filed grievances on behalf of each employee. The Union and the Company processed these grievances through the steps of the grievance procedure without resolution. At the conclusion of the last meeting the Union demanded arbitration. The Company refused to submit to arbitration on the grounds that the grievances were not arbitrable.

The Union brought this action pursuant to Section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, seeking an order to compel the Company to arbitrate the grievances of the employees denied reinstatement. The Union argued that the Company's unilateral implementation of its last offer extended the Company's contractual obligation to arbitrate.

■ The district court, in granting the Union's summary judgment motion and denying the Company's motion, held that the parties intended to abide and be bound by the unchanged terms of the expired collective bargaining agreement. R. Vol. I, Tab 21, p. 7. The court found that the Company's extension of the final offer and the employees' continuation to work after the offer was implemented constituted objective manifestations of the parties' mutual assent to contract. *Id.* Upon review of the district court's decision, we utilize the same standard employed by the court below and examine the conclusions reached *de novo.* Fed.R.Civ.P. 56(c); *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir.1987).

■ In *United Food and Commercial Workers International Union v. Gold Star Sausage Co.*, 897 F.2d 1022 (10th Cir. 1990), we rejected the position taken by the labor union therein that federal courts should enforce an arbitration provision included within the terms of a unilaterally-implemented last offer. *Id.* at 1026–27. Employer implementation of a last and final offer is, by itself, insufficient to invoke jurisdiction absent some manifestation of acceptance of the offer sufficient to create a contract. *Id.* at 1026. As we noted in *Gold Star*, jurisdiction under Section 301(a) of the Labor–Management Relations Act arises when redress is sought for "'violations of *contracts* between an employer and a labor organization.'" *Id.*, citing 29 U.S.C. § 185(a) (emphasis supplied in *Gold Star*). Thus, simply spotlighting management's exercise of its statutory right to implement its last and final offer does not establish the contractual basis necessary for jurisdiction. *Milwaukee Typographical Union No. 23 v. Madison Newspapers, Inc.*, 444 F.Supp. 1223, 1227 (W.D.Wis. 1978), *aff'd mem.*, 622 F.2d 590 (7th Cir. 1980).

---

1. On June 4, 1987, the Company sent a letter to the Union outlining the terms of the Company's last contract offer. This letter delineated the contract sections which would be changed from the prior agreement, and further stated, "[A]ll other provisions of the 1984 agreement not hereinbefore mentioned remain in effect under our last offer." No change in the grievance and arbitration provision had been discussed.

■ The contract between the parties required for jurisdiction need not be a written, signed collective bargaining agreement, but may exist as any informal agreement between the parties significant to the maintenance of labor peace between them. *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503 (1962). It suffices that the parties' intent to abide by the agreed-upon provisions of any such informal agreement is in some manner manifest. *Bobbie Brooks, Inc. v. Int'l Ladies Garment Workers Union,* 835 F.2d 1164, 1168 (6th Cir.1987); *see also United Paperworkers Int'l Union v. Wells Badger Industries, Inc.,* 835 F.2d 701, 704 (7th Cir.1987).

In *Gold Star,* we noted that in one case an employer's implementation of its last offer constituted an invitation to enter into an interim unilateral contract, accepted by the employees' continued performance. 897 F.2d at 1026, *citing Taft Broadcasting Co. v. NLRB,* 441 F.2d 1382 (8th Cir.1971). Yet, in *Gold Star* we found no unilateral contract. The Union therein had expressly rejected the employer's last offer. Thus, the fact that the *Gold Star* employees continued to work after the rejection did not constitute the acceptance necessary to form a contract, and the *Gold Star* court was without jurisdiction to proceed under Section 301 of the Labor–Management Relations Act. 897 F.2d at 1024, 1026.

■ The facts of the present case likewise suggest implicit rejection of the employer's offer. The lower court's determination that a "legal relationship [was] created between the parties on July 1, 1987," *see* R. Vol. Tab 21, p. 8, the date the last offer was implemented, is unsupported. Employee conduct after July 1, 1987, did not evince an acceptance of the Company's last offer. To the contrary, the commencement of a seven-month strike on October 5, 1987, during which time the alleged misconduct occurred, shows continued dissatisfaction with and rejection of the employer's offer.[2] *See Int'l Brotherhood of Boiler-*

*makers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers—Local 1603 v. Transue & Williams Corp.,* 879 F.2d 1388, 1393–94 (6th Cir.1989) (labor contract found to exist because parties refused to marshal economic weapons such as strikes or lockouts and adhered to the arbitration provisions of their prior agreement during period without formal collective bargaining agreement).

Accordingly, we do not agree that a contractual relationship was created on July 1, 1987, either by virtue of the employer's implementation of its last offer or by virtue of any perceived acceptance of that offer evidenced by employee conduct. We determine that this Court is without jurisdiction to consider whether the disputes in this case should be referred to arbitration and, hereby, REVERSE the decision of the district court.

---

**2.** As of the date the briefs were filed in this matter the Union and Company still had not agreed on a new collective bargaining agreement.