## MAXWELL MACMILLAN CO., INC., Plaintiff,

v.

## DISTRICT 65, UAW, Defendants.

### No. 90 Civ. 2594 (LJF).

United States District Court,
S.D. New York.

May 11, 1992.

Baer Marks & Upham, by Herbert J. Levine, New York City, for Maxwell Macmillan.

Eisner, Levy, Pollack & Ratner, P.C., by Daniel J. Ratner, New York City, for District 65, UAW.

## OPINION AND ORDER

FREEH, District Judge:

Plaintiff Maxwell Macmillan Professional and Business Reference Division of Macmillan Information Co., Inc. ("Macmillan") moves for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant District 65, United Automobile, Aerospace and Agricultural Implement Workers, AFL–CIO ("District 65") opposes the motion and cross-moves for summary judgment. For the reasons stated below, District 65's motion is granted.

*Facts*

Construing the record in the light most favorable to Macmillan the relevant facts of this case are as follows:

On October 30, 1989, Prentice–Hall sold certain assets including the Prentice–Hall Information Services Division to Macmillan. On or about that same day, three Macmillan legal editors were laid off. On or about January 22, 1990, District 65 filed a grievance with Macmillan asserting that the layoffs constituted a breach of an agreed upon term and condition of employment, specifically, that seniority would be a determining factor in making layoff decisions.[1]

---

**1.** The previous agreement contained a seniority clause, which provides, among other things, that union employees, like the three Macmillan editors, shall be laid off in the inverse order of their seniority. The Agreement also contained an arbitration clause which provided that dis-

At the time of the sale to Macmillan, no collective bargaining agreement was in effect between District 65 and Prentice–Hall, the 1985–1988 agreement having expired on January 31, 1988. During the months of January through June 1988, District 65 and Prentice–Hall met to discuss the terms and conditions for a new agreement. On or about June 20, 1988, Prentice–Hall unilaterally implemented its final offer which included, among other things, identical language from the previous agreement's seniority and arbitration clauses. The offer was never accepted in writing by District 65.

On or about February 14, 1990, District 65 sought to arbitrate the improper layoffs before the American Arbitration Association. Macmillan refused to arbitrate the dispute, and commenced this action to stay arbitration.[2]

*Discussion*

Summary judgment is appropriate if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. On such a motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance*, 804 F.2d 9 (2nd Cir.1986), *cert. den.*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Macmillan contends, among other things, that it should not be required to arbitrate because there is no formal contract to arbitrate. While Macmillan acknowledges that Prentice–Hall's June 2, 1989 final offer included an arbitration provision, it nevertheless argues that because District 65 never formally accepted Prentice–Hall's final offer, Macmillan is not now bound to arbitrate.

District 65 argues that Macmillan is bound to arbitrate because District 65 manifested its acceptance of Prentice–Hall's offer by its decision to continue working rather than calling for a strike.[3]

It is well settled that the question whether parties have agreed to arbitrate is "an issue for judicial determination." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). It is equally well established that the terms of a collective bargaining agreement are enforceable until a new agreement or impasse is reached. *See, Derrico v. Sheehan Emergency Hospital*, 844 F.2d 22, 26 (2d Cir.1988) ("The terms of an expired agreement ... retain legal significance because they define the *status quo*."). There is no dispute that Prentice–Hall and District 65 reached a *bona fide* impasse on June 2, 1988. As was its right, Prentice–Hall unilaterally implemented its final offer. *NLRB v. Katz*, 369 U.S. 736, 744–46, 82 S.Ct. 1107, 1112–13, 8 L.Ed.2d 230 (1962).

While some courts have held that the provisions in a final offer can never be legally enforceable unless there is a written acceptance creating a contractual agreement, *United Food & Commercial Workers v. Gold Star Sausage Co.*, 897 F.2d 1022, 126–27 (10th Cir.1990), others have held that the final offer becomes a legally enforceable interim agreement notwithstanding the absence of a written acceptance if the Union continues to work rather than strike. *See United Paperworkers International Union v. Interna-*

putes over the seniority clause are subject to arbitration before the American Arbitration Association.

**2.** Macmillan does not dispute that the arbitration clause in the expired agreement covers the asserted grievance.

**3.** The parties do not dispute that Prentice–Hall made a final offer which included an arbitration provision. Nor do the parties dispute that the Union continued to work after receiving Prentice–Hall's final offer.

tional Paper Co., 920 F.2d 852, 858 (11th Cir.1991) ("By implementing [the] modified offer, the company was in effect stating the conditions of employment under which the Union's members would work, should they choose to do so, until a long-term agreement was reached.").

In the absence of any Supreme Court or Second Circuit decision addressing this issue, and mindful that courts broadly construe traditional contract law to encourage arbitration, especially in labor disputes, this Court is inclined to follow the sound reasoning of the 11th Circuit. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 548, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964); *Eastern Air Lines v. Air Line Pilots Ass'n,* 861 F.2d 1546, 1550 (11th Cir.1988). *See also International Union v. Big Horn Coal Co.,* 916 F.2d 1499, 1501–1502 (10th Cir.1990) ("Employer implementation of a last and final offer is, by itself, insufficient to invoke jurisdiction absent some manifestation of acceptance of the offer sufficient to create a contract ..."). District 65 manifested its acceptance of Prentice–Hall's final offer not by words, but by conduct. *See Chicago Typographical Union v. Chicago Sun–Times,* 935 F.2d 1501, 1510 (7th Cir.1991) ("the union might accept the offer, arbitration clause and all, by conduct rather than by express words ..."). District 65's reluctance to incorporate certain provisions of Prentice–Hall's final offer into a written agreement is irrelevant to the fact that District 65 accepted the implementation of the undisputed final offer by manifesting its assent to be bound by the undisputed terms of Prentice–Hall's final offer.

Having concluded that the undisputed evidence in the record confirms that Prentice–Hall and District 65 created an interim agreement, which Macmillan, as Prentice–Hall's successor, is thereby bound by its provisions, including the arbitration clause, the Court declines to address the other arguments put forth by the parties in support of their motions, specifically, the parties obligations to arbitrate under the expired 1985–1988 agreement. *See, e.g., Litton Financial Printing Division v. National Labor Relations Board,* —— U.S. ——, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); *Nolde Brothers, Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977).

### Conclusion

District 65's motion for summary judgment is granted, and Macmillan's motion for summary judgment is denied. The parties are directed to proceed to arbitrate the layoff grievance.

SO ORDERED.