Dated at New Haven, Connecticut, this 9th day of April, 1991.

**UNITED PAPERWORKERS INTERNATIONAL UNION, United Paperworkers International Union Local 5 and William R. MacDougal, Plaintiffs,**

v.

**INTERNATIONAL PAPER COMPANY, Defendants.**

No. 91–CV–770.

United States District Court,
N.D. New York.

Oct. 26, 1992.

---

Blitman & King, Syracuse, N.Y. (James R. LaVaute, of counsel), for plaintiffs.

Judge & Duffy, Glens Falls, N.Y. (H. Wayne Judge, of counsel), for defendants.

CHOLAKIS, District Judge.

## MEMORANDUM DECISION AND ORDER

Pursuant to § 301 of the Labor–Management Relations Act of 1947, as amended, 29 U.S.C. § 185 ("the Act"), plaintiffs, United Paperworkers International Union and United Paperworkers International Union Local 5 ("the Union") and William R. Mac-Dougal ("MacDougal"), bring this breach of contract action against defendant International Paper Company ("the Company").

The Union and the Company have been parties to a series of contracts or collective bargaining agreements ("CBA") governing work at the Company's Ticonderoga, N.Y. paper mill ("the Mill"). One such CBA took effect on June 1, 1985 ("the 1985 CBA").

The 1985 CBA provided for the application of the regulations and instructions of the Company, including the Mill Rules attached to the 1985 CBA, and the continuation of such regulations, instructions and Rules "during the life of the Agreement or any extension of the life of the Agreement[.]"[1] Under Mill Rule 19:

> Extreme penalty of dismissal from service; to be applied in all cases of flagrant or willful violations of the rules of the Company, or the law of the land, where a thorough investigation proves the employee concerned to be guilty and the Mill Manager is convinced dismissal is the only method by which discipline can be maintained ...

*See* Defendant's Exhibit A, Mill Rule 19(C).

Another term of the 1985 CBA provided that it "shall remain in effect until May 31, 1988, and from year to year thereafter unless terminated in accordance with the provisions of Section 11 below." *See* Defendant's Exhibit A, § 10(A). According to the Company, on June 2, 1988 it presented its best offer to the Union for a new labor agreement—which was rejected by the Union. Subsequently, on June 14, 1988 the company gave notice[2]—pursuant to § 11[3]—of its intention to terminate the 1985 CBA on June 25, 1988.

The negotiations that followed this "termination" failed to produce a new CBA which was acceptable to both parties; as a result, by letter dated January 27, 1989, the Company notified the Union that it was "implementing" its best offer—the June 2, 1988 offer, as amended on June 17, 1988. It appears that a new CBA was finally reached between these two parties on May 31, 1992. It also appears that the Union's members continued to perform their duties at the Mill at all times prior this new CBA.

On January 14, 1991, during the interim between the Company's "implementation" of its best offer and the recently agreed upon CBA, plaintiff MacDougal—having al-

---

1. *See* 1985 CBA (Defendant's Exhibit A), § 12.

2. *See* Defendant's Exhibit B (Mill Manager Paul T. Stecko's June 14, 1988 letter to Union Representative Mario Scarselletta).

3. § 11 provides that
 either party may give written notice to the other party of its intent to terminate the Agreement in ten (10) days. All the provisions of the Agreement shall remain in full force and effect until the specified time has elapsed. During this period attempts to reach an agreement shall continue.
 B. If the parties have failed to resolve their differences before the specified time has elapsed, all obligations under the Agreement are automatically canceled.

legedly altered a series of 31 computer commands to the "digester"[4] on January 5, 1991—was terminated from his employ with the Company. This discharge, for his alleged sabotage of Mill operations, is the underlying reason for the present action. Plaintiffs claim that MacDougal's discharge was in violation of the contract between the Union and the Company because (1) a "thorough investigation which proves the employee concerned to be guilty" was not performed, and (2) the Company refused to submit the dispute concerning MacDougal's discharge to an arbitrator.

### Summary Judgment

Pursuant to Fed.R.Civ.P. Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding such a motion, the Court is not to resolve disputed issues of fact, but rather, to assess whether material factual issues remain for the trier of fact, while resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)). The party seeking summary judgment bears the burden of demonstrating the absence of material factual issues in dispute. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983). However, "the opposing party may not rest upon mere conclusory allegations or denials[,]" they must "set forth 'supporting arguments or facts in opposition to the motion.'" *Id.* at 9 (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31 (2d Cir.1978).

The Company now moves for the summary judgment dismissal of this action based upon this Court's lack of jurisdiction under the Act. The Act provides for the jurisdiction of this Court over "[s]uits for violation of contracts between an employer and a labor organization representing employees ..." 29 U.S.C. § 185(a). Accordingly, the Company contends that no contract existed after June 25, 1988 to bring the present claims within this Court's jurisdiction.

In opposition, plaintiffs contend that, as manifested by both parties' mutual assent to the "day-to-day" extension of the 1985 CBA, there was a binding contract at all relevant times. According to plaintiffs, this mutual assent was shown by: (1) the continuation of the terms of the 1985 CBA beyond the contractual expiration date of May 31, 1988; (2) the continuation of the terms of the 1985 CBA beyond the "termination" date of June 25, 1988, when "all obligations" under the 1985 CBA would have been otherwise "automatically canceled"; (3) the honoring of critical clauses contained in the 1985 CBA (e.g., union security/dues clauses and the no strike/lockout clause); and (4) the statements of Company representatives expressly acknowledging that the parties were operating under the extended terms of the 1985 CBA.

The Second Circuit has concluded that "[w]hen a complaint alleges a claim based on events occurring after the expiration of a collective bargaining agreement ... section 301 cannot provide a basis for jurisdiction." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22 (2d Cir.1988). Accordingly, it appears that the 1985 CBA cannot provide the jurisdictional basis for the present action, which is premised on events[5] occurring 2½ years after the "termination." Moreover, while the terms and conditions of an expired employment contract may remain enforceable by operation of the National Labor Relations Act, 29

---

4. A "large cooking vessel" involved in the processing of woodpulp at the Mill.

5. Events which concern "rights" under the terminated 1985 CBA which are *not* of the type which would be considered as having accrued

or vested to MacDougal's benefit. *See Litton Financial Printing Div. v. NLRB,* — U.S. —, — – —, 111 S.Ct. 2215, 2224–27, 115 L.Ed.2d 177, 196–99 (1991).

U.S.C. § 158 ("NLRA")[6], they are not enforceable by virtue of the expired contract: i.e., the continuation of such terms and conditions does not necessarily establish that the expired contract is still effective. *Litton*, —— U.S. at ——, 111 S.Ct. at 2225, 115 L.Ed.2d at 197.

 Nevertheless, any agreement between these two parties *subsequent* to the termination of the 1985 CBA *could* provide a basis for § 301 jurisdiction. In that regard, an "implied, interim contract resulting from [an] implemented final offer may take [the] form of [an] 'informal agreement between the parties significant to the maintenance of labor peace between them'" *United Paperworkers Int'l Union v. Int'l Paper Co.*, 920 F.2d 852, 860 (11th Cir. 1991) (quoting *Int'l Union v. Big Horn Coal Co.*, 916 F.2d 1499, 1501–02 (10th Cir.1990)). In determining whether or not such a subsequent agreement exists in the present action the Court is confronted with a material factual dispute; and for the Court to make such a determination, as a matter of law, the Court would have to make impermissible inferences and/or factual determinations.[7] As a result, this Court cannot determine the *non-existence* of a § 301 contract as a matter of law, and defendant's requested summary judgment is hereby denied.

Similarly, the summary judgment cross-motion brought by plaintiffs, which is dependent upon the *existence* of such a contract, must also be denied due to this Court's inability to determine that such an agreement existed as a matter of law.

IT IS SO ORDERED.

---

**6.** E.g., as applied to an unfair labor practice under NLRA § 8.

**7.** E.g., in January of 1990—one year after the "implementation"—Bill Chestnut, the Company's representative, allegedly said: "[t]he rest of the agreement is in full force and effect" *See* Defendants' Exhibit D, the 9/25/91 Deposition of Mario Scarselletta, pp 22–23. What did he mean? What agreement? ... and what was being excluded? (The Court notes that it is the Union's representative, Scarselletta, who is "quoting" the Company's representative—clearly raising a question of credibility.)