999 F.2d 540
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Teresa L. HART, et al., Plaintiffs-Appellants,
v.
REYNOLDS & REYNOLDS CO., et al., Defendants-Appellees.
 No. 92-3820.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1993.
 
 Before JONES and NELSON, Circuit Judges, and FRIEDMAN, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from the denial of a preliminary injunction sought by a disabled employee in an action brought against her employer under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. The injunction would have required the defendant employer to make salary continuation payments pendente lite. The district court concluded, after an evidentiary hearing, that the defendant's salary continuation plan was a "payroll practice" and not an "employee welfare benefit plan" governed by ERISA; that the defendant was therefore free to stop making salary continuation payments without regard to the procedural requirements of § 503 of ERISA, 29 U.S.C. § 1133; that the plaintiff had not shown a substantial likelihood of success on the merits of this issue; and that although the plaintiff would face irreparable injury if the injunction were denied, the balance of the relevant factors was not such as to justify issuance of the injunction. Finding no abuse of discretion, we shall affirm the district court's decision.
 
 
 2
 * Plaintiff Teresa L. Hart was hired by defendant Reynolds & Reynolds Co. on April 25, 1984, as a salaried nonexempt employee. (The term "nonexempt employee" is defined in Reynolds' Human Resources Manual as "an employee who is not exempt from state and federal minimum wage and overtime regulations." The manual goes on to say that such an employee "receives overtime pay as outlined in the overtime section of this manual.")
 
 
 3
 Policy No. 4.07, as set forth in the Human Resources Manual, establishes a short-term disability policy under which salaried nonexempt employees with five or more years of service receive 100 percent of pay for up to 150 days if they become unable to work due to a continuous illness or injury. The policy also provides, among other things, that "[e]mployees will be considered to have voluntarily resigned if ... [t]hey engage in any occupation or employment or perform any work for compensation or profit while on disability."
 
 
 4
 In addition to being eligible for temporary income protection under Policy No. 4.07, Mrs. Hart was eligible for long-term disability insurance and other benefits under an ERISA flexible benefit plan referred to by the company as "FlexPlus." Both the FlexPlus plan and the Human Resources Manual contain statements to the effect that they do not constitute contracts of employment.
 
 
 5
 Mrs. Hart went on disability status in January of 1992 because of a psychological condition. She returned to work for a short period in February of 1992, but resumed her disability status soon thereafter; she has not returned to work since. Reynolds made short term disability payments to Mrs. Hart for a time pursuant to Policy No. 4.07.
 
 
 6
 Under the policy, Reynolds "reserves the right to demand impartial medical examination ... at any time during the disability period." Reynolds exercised this right in March of 1992, asking that Mrs. Hart be examined by a psychiatrist. Mrs. Hart's disability benefits were suspended on March 30, 1992, pending the results of the examination.
 
 
 7
 In late March or early April of 1992 defendant Jane Holeman, Reynolds' manager of employment and staffing, received information that Mrs. Hart was working for her husband while on disability status. Reynolds then engaged Equifax, a private investigative service, to follow Mrs. Hart. Surveillance conducted between April 3, 1992, and April 6, 1992, indicated that Mrs. Hart might have been working at her husband's business. In a letter dated April 10, 1992, Ms. Holeman informed Mrs. Hart that effective as of April 3, 1992, her employment would be deemed voluntarily terminated.
 
 
 8
 Mrs. Hart and her husband promptly sued Reynolds in federal district court. The complaint alleged that the payment of disability benefits had been terminated without compliance with the procedural requirements of § 503 of ERISA, 29 U.S.C. § 1133, and alleged further that Mrs. Hart's discharge violated § 510 of ERISA, 29 U.S.C. § 1140. The district court declined to grant a preliminary injunction requiring Reynolds to resume its payments to Mrs. Hart, and this appeal followed.
 
 II
 
 9
 As an initial matter we note that the plaintiffs' notice of appeal is not effective as to Mr. Hart because his name does not appear anywhere in the notice. See Minority Employees v. Tennessee Dept. of Emp. Sec., 901 F.2d 1327 (6th Cir.) (en banc), cert. denied, 498 U.S. 878 (1990), as interpreted in Francis v. Clark Equipment Co., --- F.2d ---- (6th Cir.1993). Lacking jurisdiction over Mr. Hart's appeal, we confine ourselves to Mrs. Hart's.
 
 
 10
 Mrs. Hart contends that the payments she received from Reynolds after she went on disability status were made pursuant to an "employee welfare benefit plan" as that term is used in ERISA. An employee welfare benefit plan is
 
 
 11
 "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." (29 U.S.C. § 1002(1).)
 
 
 12
 The Department of Labor has promulgated regulations providing the following exception to the statutory definition:
 
 
 13
 "(b) Payroll Practices. For purposes of title I of [ERISA] and this chapter, the terms 'employee welfare benefit plan' and 'welfare plan' shall not include--....
 
 
 14
 (2) Payments of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment);...." (29 C.F.R. § 2510.3-1(b).)
 
 
 15
 Mrs. Hart does not challenge the validity of this regulation.
 
 
 16
 The district court found that Mrs. Hart was paid her normal compensation until March 30, 1992, and that the payments were made out of Reynolds' general assets. Policy No. 4.07 therefore represented a payroll practice, the court concluded, and not an employee welfare benefit plan.
 
 
 17
 Mrs. Hart argues that she did not receive her normal compensation while she was on disability, pointing out that she was not paid overtime. As the district court noted however, overtime pay is not part of an employee's normal compensation; such pay represents extraordinary compensation for hours worked in excess of normal hours.
 
 
 18
 Mrs. Hart argues further that her disability compensation was not "normal" because it was based upon calendar days rather than work days. However, this calculation method did not affect the amount of money Mrs. Hart received.
 
 
 19
 Mrs. Hart challenges the district court's finding that the disability pay came out of general assets, referring in this connection to a letter from Reynolds in which Policy No. 4.07 was referred to as part of Reynolds' "group insurance" benefits. Mrs. Hart contends that the letter caused her to believe that the policy was funded by a commercial insurance contract. The court found as a fact that it was not so funded, however, and we cannot say that this finding was clearly erroneous.
 
 
 20
 Like the district court, we conclude that Reynolds' Policy No. 4.07 is a payroll practice not subject to ERISA's procedural protections. See Abella v. W.A. Foote Memorial Hosp., Inc., 740 F.2d 4, 5 (6th Cir.1984) (sick pay plan a payroll practice not subject to ERISA); Department of Labor PWBA Opinion Letter 79-69 A, (available on WESTLAW, FLB-ERISA database), 1979 ERISA LEXIS 23 (Sept. 25, 1979) (SunOlin Chemical Company short-term disability policy that provided for continuation of all or part of a participant's compensation is an exempt payroll practice).
 
 
 21
 Mrs. Hart also argues that Reynolds violated the law in cutting off the insurance coverage she had under FlexPlus, the company's flexible benefit plan. The FlexPlus plan explicitly provides, however, that an employee's right to participate shall cease upon the termination of his or her employment. Mrs. Hart worked at Reynolds on an at-will basis, and she was subject to discharge for any lawful reason or for no reason at all. In the normal course of things, any termination of employment would result in a termination of benefits.
 
 
 22
 There is one situation in which, by statute, an employee may not be discharged. Section 510 of ERISA provides, in pertinent part, that:
 
 
 23
 "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." (29 U.S.C. § 1140.)
 
 
 24
 To establish a right to relief under § 510 of ERISA, Mrs. Hart would have to show (1) the existence of an employee benefit plan subject to ERISA and (2) that the defendants acted with the specific intent to deprive her of some right under that plan. See, e.g., Rush v. United Technologies, 930 F.2d 453, 457 (6th Cir.1991). FlexPlus was unquestionably an ERISA plan, but it appears unlikely that Mrs. Hart will be able to show that the defendants had any specific intent to deprive her of her rights under the plan. As the district court put it,
 
 
 25
 "[t]he Plaintiffs simply did not present any evidence tending to establish that Reynolds fired Hart because, under FlexPlus, she was receiving benefits or would receive benefits in the future. On the contrary, the evidence before the Court clearly demonstrates that Hart was discharged because those making the decision to fire her believed that she was working while on disability, in violation of Reynolds' salary continuation plan." (Opinion at 13-14.)
 
 
 26
 Mrs. Hart notes that her disability pay was suspended on March 30, 1992, while her benefits under FlexPlus were terminated in April, when her employment was terminated. But this chronology does not support the theory of an illicit motive. The district court was correct in observing that Mrs. Hart presented no evidence of any specific intent to deprive her of ERISA protected benefits. The termination of such benefits was merely incidental to a lawful termination of employment. The district court therefore did not abuse its discretion in denying the injunction.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The Honorable Bernard A. Friedman, United States District Judge for the Eastern District of Michigan, sitting by designation