MARTIN MARIETTA ENERGY
SYSTEMS, INC., Plaintiff,

v.

INDUSTRIAL COMMISSION
OF OHIO, Defendant.

No. C2–93–54.

United States District Court,
S.D. Ohio, E.D.

Feb. 3, 1994.

Robert E. Tait, Vorys, Sater, Seymour and Pease, Columbus, OH, for plaintiff.

Lee Fisher, Atty. Gen. of Ohio, William J. McDonald, Asst. Atty. Gen., Columbus, OH, for defendant.

## OPINION AND ORDER

GRAHAM, District Judge.

Plaintiff, Martin Marietta Energy Systems, Inc., seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to clarify its obligations, if any, under an order of the Industrial Commission of Ohio ("the Commission"), defendant herein, issued on May 8, 1992 in Ohio Worker's Compensation Claim No. 89–15905. Plaintiff invokes this court's jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the National Labor Relations Act ("NLRA"), as amended by the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 *et seq.* This case is before the court for a ruling on plaintiff's motion for summary judgment filed on July 28, 1993 and on defendant's cross-motion for

summary judgment filed on December 1, 1993. The court notes that Local Union No. 3–689 of the Oil, Chemical & Atomic Workers International Union has moved for leave to file a brief as *amicus curiae*. Since the briefs of the parties to this case address the relevant issues discussed in the proposed *amicus* brief, the Union's motion is denied.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355).

The circumstances underlying this case commenced on May 15, 1989, when Richie R. Kinnison, an employee of plaintiff's Portsmouth Gaseous Diffusion Plant, sustained a work-related injury. Ms. Kinnison applied for and received workers' compensation benefits for the period May 17 through June 11, 1989. Ms. Kinnison was a member of Local Union No. 3–689 of the Oil, Chemical, and Atomic Workers International Union, and her employment was governed by a collective bargaining agreement effective May 2, 1988 to May 2, 1991. Under Article XVII, Sections 4 through 6, an employee who is absent from work due to an occupational disability may qualify for benefits which are designed to supplement the workers' compensation benefits paid to the employee. The agreement provides in relevant part:

*Section 4. Occupational Disability Pay*

(a) Any employee who is absent from work because of an occupational disability arising out of and in the course of employment ... shall be granted a leave of absence in accordance with Article IX. When properly approved by the Company, an employee shall be paid an amount equal to the difference between his/her base hourly rate and any payments received from Workers' Compensation.... Such payment shall cease when the employee becomes eligible for disability retirement benefits under the terms of the Pension Plan provided for in Article XIX of this Contract, or when the Company's doctor finds the employee is able to return to work ...

\* \* \* \* \* \*

*Section 5. Basis of Payment*

All disability payments provided for in this Contract shall be reduced by the amount or amounts of any other benefits which

might be provided through state or federal legislation for the same type of disability and for the same period of absence.

*Section 6. Rate of Pay*

Non-occupational and occupational disability payments shall be based on the rate the employee would be receiving if working.

Plaintiff scheduled a medical examination for Ms. Kinnison with plaintiff's physician on May 25, 1989 to determine her eligibility for Section 4 benefits. After this appointment, Ms. Kinnison was told to consult with an orthopedic surgeon and to return for another evaluation on May 30, 1989. Ms. Kinnison did not appear for this examination, nor did she attend another examination scheduled after that date. She returned to work on June 12, 1989. Due to her failure to attend the last two medical examinations, the period between May 30, 1989 and June 9, 1989 was counted in part as vacation and in part as an unexcused absence. The Union grieved plaintiff's handling of Ms. Kinnison's failure to appear, and plaintiff denied the grievance, but subsequently compromised by recording the absences as the subject of a coaching session in its progressive discipline program.

On October 10, 1989, Ms. Kinnison filed a motion with the Ohio Bureau of Workers' Compensation and the Commission requesting an order directing plaintiff to comply with Ohio Administration Code § 4121–3–09(B)(4), a Commission regulation implementing the requirements of Section 4123.-651(B), Ohio Revised Code. These Ohio laws basically provide that the employer of a workers' compensation claimant is entitled to require the claimant to undergo one medical examination, to be conducted at the employer's expense, but that any subsequent medical examinations directed toward the same issue may be conducted only with the approval of the Commission. A district hearing officer heard Ms. Kinnison's motion on February 13, 1990 and determined that the Commission lacked jurisdiction over examinations conducted pursuant to the collective bargaining agreement. This decision was affirmed by the Columbus Regional Board of Review on June 5, 1990.

A hearing before the Commission was held on April 1, 1992, and on May 8, 1992, the Commission issued an order vacating the previous decisions. The Commission found that the provisions of Article VII, Section 4 conflict with the provisions of § 4123.651 and § 4121–3–09(B)(4) and (b). The Commission found that the Ohio laws superseded the contractual provisions "concerning medical examinations requested by the employer with regard to workers' compensation claims." The Commission found that the subsequent medical examinations sought by plaintiff in Ms. Kinnison's case should have been requested pursuant to § 4123.651 and § 4121–3–09(B)(4)(a) and (b). The Commission ordered "that the employer is placed on notice that, in the future, such medical examinations requested by the employer relating to an evaluation of disability arising from a workers' compensation claim shall be made in conformity with 4123.651 O.R.C. and 4121–3–09(B)(4) O.A.C." Plaintiff contends that this order of the Commission is a state law which is preempted by ERISA and the NLRA.

Plaintiff first argues that the benefits provided under Article VII, Section 4 of the collective bargaining agreement constitute an employee welfare benefit plan governed by ERISA. Plaintiff invokes this court's jurisdiction under 29 U.S.C. § 1132(a)(3), which permits a fiduciary of an ERISA plan to bring a civil action to obtain equitable relief to enforce the terms of the plan. Under 29 U.S.C. § 1144(a), ERISA supersedes any state laws insofar as they may relate to an "employee welfare benefit plan" as that term is defined in ERISA. Defendant argues that the Section 4 benefits do not constitute an ERISA plan, and that therefore the order is not preempted.

An "employee welfare benefit plan" is defined in 29 U.S.C. § 1002(1) as

... any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefit, or benefits in the event of sickness, accident, disability,

death or unemployment, or vacation benefits, ...

The term "employee welfare benefit plan" was the subject of interpretation of a Department of Labor regulation codified at 29 C.F.R. § 2510.3–1(b). That regulation provides in relevant part:

(b) *Payroll practices.* For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include—

\* \* \* \* \* \*

(2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment); ...

In forecasting the drafting of this regulation, the Secretary of Labor noted that the regulation "will make it clear that other programs, including certain employer practices ... under which employees are paid as a part of their regular compensation directly by the employer and under which no separate fund is established will not subject the employer to any filing or disclosure duties under the Title I of the Act." 39 Fed.Reg. 42,236 (1974). In the preamble to the final regulation, the Secretary reaffirmed "that payment of normal compensation out of general assets while the employee performs no duties does not usually constitute a welfare plan." 40 Fed.Reg. 34,526 (1975).

In *Abella v. W.A. Foote Memorial Hospital*, 740 F.2d 4, 5 (6th Cir.1984), the court applied this regulation to sick leave benefits and upheld the regulation, noting that the administrative interpretation of the statute was entitled to "great weight."

█ Congress's primary concern in enacting ERISA was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. *California Hosp. Ass'n v. Henning*, 770 F.2d 856 (9th Cir. 1985). In *Henning*, the court considered an analogous regulation concerning vacation benefits contained in 29 C.F.R. § 2510.3–

1(b)(3). The court noted, *Id.* at 859, that vacation pay in the form of regular wages presented neither of the evils Congress intended to address, because wages are ordinarily paid in cash out of the resources of the business whether the employee is at work or on vacation, and there is no fund to administer or no special risk of loss or nonpayment.

The benefits payable under Section 4 are designed to supplement workers' compensation benefits received by an employee so that the employee receives his or her normal wages during the period of the disability. Defendant has submitted evidence that there is no written document apart from the collective bargaining agreement which establishes or defines the terms of these benefits, and that these benefits are paid out of plaintiff's general assets in the same manner as regular wages. Plaintiff does not contest this evidence, but does dispute that § 2510.3–1(b)(2) applies here.

Plaintiff argues that the benefits are not "normal compensation" because, when reduced by the amount of workers' compensation benefits, they amount to less than the employee's regular wage. However, the Department of Labor has taken the position that payment of less than normal compensation from an employer's general assets during periods in which an employee is absent for medical reasons may constitute an employer "payroll practice" under § 2510.3–1(b)(2). Department of Labor PWBA Opinion Letter 93–27A (available on WESTLAW, FPEN–ERISA database), 1993 ERISA LEXIS 29 (Oct. 12, 1993) (where payments equal or represent a significant portion of an employee's compensation but in no event exceed an employee's normal compensation, they constitute a payroll practice and not an ERISA plan). *See also* Department of Labor PWBP Opinion Letter 80–53A (available on WESTLAW FPEN–ERISA database), 1980 ERISA LEXIS 24 (Sept. 5, 1980) (payments which when coupled with workers' compensation equal the employee's normal compensation and which are made for a period of time during which the employee is absent due to physical or mental disabilities constitute a payroll practice under regulation).

■ Plaintiff further argues that the benefits payable under Section 4 can be continued until such time as the employee becomes eligible for permanent disability or disability retirement benefits. However, this does not alter the character of the Section 4 benefits while they are being paid out of general assets as Section 4 benefits. Further, the fact that Section 4 benefits are payable only for occupational disabilities does not remove these benefits from the purview of § 2510.3–1(b)(2), since they fall within the description of "normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties."

Plaintiff further argues that the Section 4 benefits do not fall within the scope of the regulation because the payment of benefits is contingent upon the employee medical examinations. Section 4 also provides that benefits are to be paid "[w]hen properly approved by the Company." Thus, it may be argued that agreement grants some degree of discretion to plaintiff in regard to payment of benefits. Plaintiff relies on *Shea v. Wells Fargo Armored Serv. Corp.,* 810 F.2d 372, 376 (2d Cir.1987) where the court described the "payroll practices" provision as governing benefits payable "without additional conditions or contingencies of any kind." However, even the payment of wages may be described as being contingent upon the employee satisfying the employer that he has performed the work which warrants payment of the wages. The payment of sick leave wages may be contingent upon the employee satisfying the employer that he is not malingering. Further, as later noted by the Second Circuit in *United Automobile, Aerospace and Agricultural Implement Workers of America, Local 33 v. R.E. Dietz Co.,* 996 F.2d 592, 597 (2d Cir.1993), the regulations that define "payroll practice" are silent as to whether additional conditions or contingencies would subject payroll-type benefits to ERISA. This court concludes that even if it is assumed, without deciding that issue, that plaintiff has the right under the agreement to conduct unlimited medical examinations or to exercise some other discretion over the payment of Section 4 benefits, this type of

discretionary authority does not remove the Section 4 benefits from the ambit of § 2510.3–1(b)(2) and convert them from a payroll practice into an ERISA plan. *See Hart v. Reynolds & Reynolds Co.,* 999 F.2d 540, 1993 WL 243797, 1993 U.S.App. LEXIS 17678 (6th Cir.1993) (short-term disability policy paid from general assets constituted a payroll practice even though employer reserved the right under the policy to demand impartial medical examinations). The Section 4 benefits constitute a payroll practice under § 2510.3–1(b)(2), and no genuine issue of material fact has been shown to exist on that point.

■ ERISA preemption applies only to ERISA plans. *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987); *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320, 324 (2d Cir. 1985). Since the Section 4 benefits do not constitute an employee welfare benefit plan under ERISA, defendant's order is not preempted by ERISA, and defendant is entitled to summary judgment on this issue.

Plaintiff also argues that defendant's order is preempted under the NLRA. Plaintiff's theory is that since the defendant's order impacted upon substantive terms of the collective bargaining agreement, the defendant thereby infringed upon the right of collective bargaining guaranteed under the NLRA, and the order is therefore preempted by the NLRA.

■ Plaintiff asserts that jurisdiction is proper under 29 U.S.C. § 185(a). This section of the LMRA gives the districts courts jurisdiction over actions "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations." Thus, an action under § 185(a) must be a suit for violation of a contract between an employer and a labor organization or a suit for violation of a contract between labor organizations. *Wooddell v. Int'l Broth. of Elec. Workers Local 71,* —— U.S. ——, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991).

The subject of plaintiff's action is the Commission's order, in which the Commission concluded that the provisions of Ohio Revised Code § 4123.651 and Ohio Admin.Code § 4121–3–09(B)(4)(a) and (b) apply to the administration of Section 4 benefits. Plaintiff's suit does not involve any violation or potential violation of the terms of the collective bargaining agreement. Rather, plaintiff is concerned with whether it must comply with defendant's order, and it is the state law which plaintiff attacks as being invalid, not the collective bargaining agreement. Plaintiff's complaint really seeks a determination of plaintiff's rights and liabilities under state law in the form of the Commission's order, not under the collective bargaining agreement, and plaintiff's action does not fall within the scope of § 185.

The court further notes that the only defendant in this case is the Commission. The Commission is not a party to the collective bargaining agreement. Courts have generally held that § 185 creates federal jurisdiction only over parties to the contract being sued on. *Metropolitan Detroit Bricklayers District Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 583 (6th Cir.1982). A suit against a non-signatory of a contract cannot be considered a suit for violation of the contract. *International Union, UMWA v. Covenant Coal Corp.*, 977 F.2d 895 (4th Cir.1992). A district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract. *Service Hospital, Nursing Home and Public Employees Union, Local No. 47 v. Commercial Property Services, Inc.*, 755 F.2d 499, 506 (6th Cir. 1985). Plaintiff's complaint against defendant, a non-signatory, does not fall within the scope of § 185, and this court does not have subject matter jurisdiction over plaintiff's claim under the NLRA.

The plaintiff seeks a declaratory judgment clarifying its rights and liabilities in light of the Commission's order. Under 28 U.S.C. § 2201, "in a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration." However, the Declaratory Judgment Act merely creates a remedy and does not provide an independent basis for jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Louisville & Nashville R.R. Co. v. Donovan*, 713 F.2d 1243 (6th Cir.1983). Plaintiff's complaint does not fall within the jurisdiction provided under § 185, and plaintiff offers no other basis under federal law for this court to assume jurisdiction.

The actual controversy in the instant case is the defendant's determination that § 4123.651 and § 4121–3–09(B)(4)(a) and (b) apply to medical examinations of employees made pursuant to the collective bargaining agreement. This court has no jurisdiction to review the correctness or validity of the defendant's interpretation and application of Ohio law. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The only available federal review of a state court's decision is the review by the United States Supreme Court provided under 28 U.S.C. § 1257. *Id.*, 460 U.S. at 476, 482, 103 S.Ct. at 1311.

Plaintiff argues that the defendant's order is preempted by the NLRA. However, plaintiff is in effect asserting preemption as a defense to whatever action the Commission might take to enforce its order. Where federal preemption is raised as a defense to threatened state action, there is no basis for federal jurisdiction. *Michigan Savings & Loan League v. Francis*, 683 F.2d 957 (6th Cir.1982). This court does not have subject matter jurisdiction to address plaintiff's NLRA preemption argument.

Even if subject matter jurisdiction existed in regard to plaintiff's labor law preemption argument, this court would decline to exercise jurisdiction. The consideration of declaratory judgment actions is a matter of discretion based upon considerations of "equity, comity and federalism," the uncertain effect of res judicata and the tendency of such decisions to be a "partial end run" around the authority of state courts to adjudicate claims falling within their jurisdic-

tion. *Green v. Mansour,* 474 U.S. 64, 72–73, 106 S.Ct. 423, 427–29, 88 L.Ed.2d 371 (1985). Some factors to be considered in deciding whether to entertain a declaratory judgment include: 1) whether the declaratory action would settle the controversy; 2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; 3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" 4) whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and 5) whether there is an alternative remedy which is better or more effective. *Nationwide Mutual Fire Ins. Co. v. Willenbrink,* 924 F.2d 104, 105 (6th Cir.1991).

Considering the above factors, the court notes that it is far from clear that this action would settle the controversy or clarify the legal relations of the parties. While plaintiff may not have invoked the declaratory judgment remedy as a mere procedural ploy, this action may have been filed as a substitute for a direct appeal from the Commission's order.

 The court is further concerned by the absence of an actual controversy. The "case and controversy" clause of the United States Constitution applies to declaratory judgment actions. *Detroit, Toledo and Ironton R.R. Co. v. Consolidated Rail Corp.,* 767 F.2d 274 (6th Cir.1985). The test for determining whether the "actual controversy" and "case or controversy" requirements have been satisfied is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 279.

The facts of this case arose from benefits payable to an employee in 1989, under a collective bargaining agreement which was due to expire in 1991. The record does not reflect that Section 4 of that collective bargaining agreement, upon which the defendant based its ruling, is still in effect. The defendant's order was issued on May 8, 1992. The order states simply that "the employer

is placed on notice that, in the future, such medical examinations requested by the employer relating to an evaluation of disability arising from a workers' compensation claim shall be made in conformity with 4123.651 O.R.C. and 4121–3–09(B)(4) O.A.C." The order does not specify what sanction would be imposed for disobedience. The order does not mandate the payment of Section 4 benefits. It may be that the only sanction the Commission would or could impose is the exclusion of evidence obtained through unauthorized medical examinations in workers compensation proceedings, a sanction which plaintiff acknowledges may be within the Commission's authority. It simply is not clear what consequences plaintiff is facing if it chooses to disregard the Commission's order.

The court further notes that another component is missing from this case which might affect the resolution of this matter. The defendant's order notes that Section 4 "requires the claimant to attend a medical examination requested by the employer." Thus, the Commission's order reflects plaintiff's interpretation of the collective bargaining agreement, which is that Section 4 would authorize plaintiff to insist upon more than one medical examination. However, the Union disagrees with this interpretation, and maintains that the language of Section 4 was intended to operate in the manner mandated by § 4123.651. The question of the meaning of Section 4 is not currently before this court, and may well be subject to an arbitration clause. It would be premature to address this dispute where some question remains as to the meaning of Section 4, since if this dispute is resolved in favor of the Union, it would render this action moot.

 Finally, more appropriate forums exist for litigating this dispute. The state courts are better equipped to determine if the Commission, a state regulatory agency, exceeded its authority under state law in issuing its order. Arbitration, if provided for in the collective bargaining agreement, may be the required procedure for determining the meaning of the agreement. The court declines to address plaintiff's NLRA preemption argument.

In accordance with the foregoing, plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted on the issue of ERISA preemption. Plaintiff's claim of preemption under the NLRA is dismissed for lack of subject matter jurisdiction.